## No. 21-2122

# In the
# United States Court of Appeals
## for the Seventh Circuit

ERIC R. BRANT, et al.,

*Plaintiffs-Appellants,*

v.

SCHNEIDER NATIONAL, INC., et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin, No. 1:20-cv-01049-WCG.
The Honorable **William C. Griesbach**, Judge Presiding.

## BRIEF OF PLAINTIFFS-APPELLANTS

MICHAEL J.D. SWEENEY
GETMAN, SWEENEY &
DUNN, PLLC
260 Fair Street
Kingston, New York 12401
(845) 255-9370

JENNIFER KROLL
SUSAN MARTIN
MICHAEL M. LICATA
MARTIN & BONNETT, P.L.L.C.
4747 North 32nd Street, Suite 185
Phoenix, Arizona 85018
(602) 240-6900
smartin@martinbonnett.com

EDWARD TUDDENHAM
23 Rue du Laos
75015 Paris, France
+33 06 84 79 8930

*Counsel for Plaintiffs-Appellants*
*(Full list of all appellants on inside cover)*

 

Eric R. Brant, Eric Alexander, Joshua Arrington, Wayne R. Avery, Jeremy A. Baldwin, Jeffrey Baldwin, Derrick C. Banks, Clarence Barber, Dwight Bardot, Ronald Barman, Tiffaney Barrett, Curtis R. Bennett, James C. Berns, Olufemi Bertha, Rogelio A. Blake, Jazae Blunt, Donna Brackbill, Victor D. Brown, Ronald Brown, Steven W. Bryan, Clifford Butterweck, Thomas Campbell, Milton Carrol, James Carstarpen, Christopher J. Chaisson, Arriel S. Cochran, Darrell Coleman, Christopher E. Collier, David J. Collins, Joseph J. Cook, Giovanni Cunningham, Ronald Deese, Richard E. Derragon, Terri Derragon, Jimmy Doolittle, Gabriel Duran, Jeffrey Ealy, Margo Ealy, George Ellis, Frank Flowers, Ronald Fritz, Joseph Goldade, Louis Gonzalez, DeWayne Greene, Brian Greenleaf, Jay G. Hanson, Mark A. Hart, Aimee Henery, Terrence Hicks, James E. Higgs, Daniel Hollins, Barry Hopkins, Thomas C. Istre, Matthew Johnson, Randy Jones, Franklin Jones, Dawn Keller, Lloyd Kenebrew, Derrick Lee Sr., Steven Lindsey, Omar Lindsey, Charles Lundeby, Sean Madison, Paul R. Martin, Scott F. Maurin, Jeffrey McClelland, Jeff McDonald, Douglas M. McGowan, Joseph Meshkin, Peter J. Metzger, William Meyers, Kendrick Montgomery, Curtis L. Montgomery, Don L. Moore, Stephen Nixon, Edward K. Oden, Levar Osby, Joey Palmer, Jonathan Pauldo, Michael Phariss, Travis Pregler, Regina Price, Louis M. Ramirez, Sirena Rich, Latoya Richardson, Amanda Ronk, Raul A Rosales, Helen Ruppel, Denis Sandoval, Brian Saunders, Donald W. Sebens, Paul M. Sherrod, Andy S. Silva Portillo, Willie Sims, David Sloan, Jerry Smith, DeAngelo Smith, Edward Stanton, Jocelyn Tate, Bobby Terrazas, Lilirs Thibodeaux Jr., Joseph Thompson, Ellis S. Tidwell, Michael Tolliver, Pedro A Torres, Patrick Toy, Michael L. Tucker, Duwayne Tucker, Shayenne A. Villa, Isiah Williams, Edward R. Wills, and Jerry Worthy

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>21-2122</u>

Short Caption: <u>Eric R. Brant v. Schneider National Inc. et al.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>see attachment A</u>

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Martin & Bonnett, PLLC, Edward Tuddenham, Getman, Sweeney & Dunn, PLLC</u>

(3) If the party, amicus or intervenor is a corporation:

   i) Identify all its parent corporations, if any; and
   <u>N/A</u>

   ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
   <u>N/A</u>

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
<u>N/A</u>

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
<u>N/A</u>

Attorney's Signature: _____  Date: <u>07/30/2021</u>

Attorney's Printed Name: <u>Michael J.D. Sweeney</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes [✓]  No [ ]

Address: <u>Getman, Sweeney & Dunn, PLLC - 260 Fair Street - Kingston, New York 12401</u>

Phone Number: <u>(845) 255-9370</u>  Fax Number: <u>(845) 255-8649</u>

E-Mail Address: <u>msweeney@getmansweeney.com</u>

rev. 12/19 AK

Case: 21-2122    Document: 24-1    Filed: 07/30/2021    Pages: 99

## Attachment A

Eric Alexander

Joshua T. Arrington

Wayne Ray Avery

Jeffrey Baldwin

Jeremy A. Baldwin

Derrick C. Banks

Clarence Barber

Dwight Bardot

Ronald Barman

Tiffaney Barrett

Curtis Ray Brewster

James C. Berns

Olufemi Bertha

Rogelio A Blake

Jazae Blunt

Donna Brackbill

Eric Brant

Ronald Brown

Victor Dean Brown

Steven W. Bryan

Clifford Butterweck

Thomas Campbell

MIlton Carrol

Case: 21-2122     Document: 24-1     Filed: 07/30/2021     Pages: 99

James Carstarphen

Christopher J. Chaisso

Arriel S Cochran

Darrell Coleman

Christopher Elliot Collie

David J Collins

Joseph J. Cook

Giovanni Cunningham

Ronald Deese

Richard E. Derragon

Terri Derragon

Jimmy Doolittle

Gabriel Duran

Jeffrey Ealy

Margo Ealy

George Ellis

Frank Flowers

Ronald Fritz

Joseph Goldade II

Louis Gonzalez

DeWayne Greene

Brian Greenleaf

Jay G Hanson

Mark Anthony Hart

Aimee Henery

Terrence Hicks

James Edward Higgs II

Daniel Hollins

Barry Hopkins Jr

Thomas C Istre

Matthew Johnson

Franklin Jones

Randy Jones

Dawn Keller

Lloyd Kenebrew

Derrick Lee Sr.

Omar Lindsey

Steven Lindsey

Charles Lundeby

Sean Madison

Paul R. Martin

Scott Frederick Maurin

Jeffrey McClelland

Jeff Mcdonald

Douglas M McGowan

Joseph Meshkin

Peter J Metzger

William Meyers

Curtis Lamar Montgom

Kendrick Montgomery

Don L Moore

Case: 24-21122   Document: 22-1   Page: 9   Date Filed: 03/04/2024

Stephen Nixon

Edward K Oden

Levar Osby

Joey Palmer

Jonathan Pauldo

Michael Phariss

Travis Pregler

Regina Price

Louis Michael Ramirez

Latoya Richardson

Sirena Rich

Ronk, Amanda

Raul A Rosales

Helen Ruppel

Denis L Tuchez Sando

Brian Saunders

Donald W. Sebens

Paul Martin Sherrod

Andy Sandro Silva Port

Willie Sims

David Sloan

Deangelo Smith

Jerry Smith

Edward Stanton

Jocelyn Tate

Bobby Terrazas

Lilirs Thibodeaux Jr

Case 21-2122   Document 24-2   Filed: 07/30/2021   Pages: 99

Joseph Thompson

Ellis Stanton Tidwell Jr.

Michael Tolliver

Pedro A Torres III

Patrick Toy

Duwayne Tucker

Michael L Tucker

Shayenna Vila

Isiah Williams Jr.

Edward R Wills

Jerry Worthy Jr

Case: 21-2122    Document: 24-1    Filed: 07/30/2021    Pages: 99

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2122

Short Caption: Eric R. Brant v. Schneider National Inc. et. al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    See Attachment A

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Getman, Sweeney & Dunn, PLLC, Martin & Bonnett, PLLC, Edward Tuddenham

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Michael M. Licata    Date: 6/30/2021

Attorney's Printed Name:  Michael M. Licata

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address:  Martin & Bonnett, 4647 N. 32nd St., Suite 185, Phoenix, AZ 85018

Phone Number: (602) 240-6900    Fax Number: (602) 240-2345

E-Mail Address: mlicata@martinbonnett.com

rev. 12/19 AK

**ATTACHMENT A**

Names of Parties Represented:

Eric R. Brant
Aimee Henery
Eric Alexander
Joshua Arrington
Wayne R. Avery
Jeremy A. Baldwin
Jeffrey Baldwin
Derrick C. Banks
Clarence Barber
Dwight Bardot
Ronald Barman
Tiffaney Barrett
Curtis R. Bennett
James C. Berns
Olufemi Bertha
Rogelio A. Blake
Jazae Blunt
Donna Brackbill
Victor D. Brown
Ronald Brown
Steven W. Bryan
Clifford Butterweck
Thomas Campbell
Milton Carrol
James Carstarpen
Christopher J. Chaisson
Arriel S. Cochran
Darrell Coleman
Christopher E. Collier
David J. Collins
Joseph J. Cook
Giovanni Cunningham
Ronald Deese
Richard E. Derragon
Terri Derragon
Jimmy Doolittle
Gabriel Duran
Jeffrey Ealy
Margo Ealy
George Ellis
Frank Flowers
Ronald Fritz

Joseph Goldade
Louis Gonzalez
DeWayne Greene
Brian Greenleaf
Jay G. Hanson
Mark A. Hart
Terrence Hicks
James E. Higgs
Daniel Hollins
Barry Hopkins
Thomas C. Istre
Matthew Johnson
Randy Jones
Franklin Jones
Dawn Keller
Lloyd Kenebrew
Derrick Lee Sr.
Steven Lindsey
Omar Lindsey
Charles Lundeby
Sean Madison
Paul R. Martin
Scott F. Maurin
Jeffrey McClelland
Jeff McDonald
Douglas M. McGowan
Joseph Meshkin
Peter J. Metzger
William Meyers
Kendrick Montgomery
Curtis L. Montgomery
Don L. Moore
Stephen Nixon
Edward K. Oden
Levar Osby
Joey Palmer
Jonathan Pauldo
Michael Phariss
Travis Pregler
Regina Price
Louis M. Ramirez
Sirena Rich
Latoya Richardson
Amanda Ronk
Raul A Rosales
Helen Ruppel

Denis Sandoval
Brian Saunders
Donald W. Sebens
Paul M. Sherrod
Andy S. Silva Portillo
Willie Sims
David Sloan
Jerry Smith
DeAngelo Smith
Edward Stanton
Jocelyn Tate
Bobby Terrazas
Lilirs Thibodeaux Jr.
Joseph Thompson
Ellis S. Tidwell
Michael Tolliver
Pedro A Torres
Patrick Toy
Michael L. Tucker
Duwayne Tucker
Shayenne A. Villa
Isiah Williams
Edward R. Wills
Jerry Worthy

Save As      Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>21-2122</u>

Short Caption: <u>Eric R. Brant v. Schneider National Inc. et. al.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[✓]  **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
   <u>See Attachment A</u>

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
   <u>Getman, Sweeney & Dunn, PLLC, Martin & Bonnett, PLLC, Edward Tuddenham</u>

(3) If the party, amicus or intervenor is a corporation:

   i)   Identify all its parent corporations, if any; and

   ii)  list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

---

Attorney's Signature: *Susan Martin*   Date: <u>6/28/2021</u>

Attorney's Printed Name: <u>Susan Martin</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]   No [✓]

Address: <u>Martin & Bonnett, 4647 N. 32nd St., Suite 185, Phoenix, AZ 85018</u>

Phone Number: <u>(602) 240-6900</u>          Fax Number: <u>(602) 240-2345</u>

E-Mail Address: <u>smartin@martinbonnett.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2122

Short Caption: Eric R. Brant v. Schneider National Inc. et. al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    See Attachment A

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    Getman, Sweeney & Dunn, PLLC, Martin & Bonnett, PLLC, Edward Tuddenham

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Jennifer Kroll    Date: 7/7/2021

Attorney's Printed Name: Susan Martin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Martin & Bonnett, 4647 N. 32nd St., Suite 185, Phoenix, AZ 85018

Phone Number: (602) 240-6900    Fax Number: (602) 240-2345

E-Mail Address: jkroll@martinbonnett.com

rev. 12/19 AK

# ATTACHMENT A

Names of Parties Represented:

Eric R. Brant
Aimee Henery
Eric Alexander
Joshua Arrington
Wayne R. Avery
Jeremy A. Baldwin
Jeffrey Baldwin
Derrick C. Banks
Clarence Barber
Dwight Bardot
Ronald Barman
Tiffaney Barrett
Curtis R. Bennett
James C. Berns
Olufemi Bertha
Rogelio A. Blake
Jazae Blunt
Donna Brackbill
Victor D. Brown
Ronald Brown
Steven W. Bryan
Clifford Butterweck
Thomas Campbell
Milton Carrol
James Carstarpen
Christopher J. Chaisson
Arriel S. Cochran
Darrell Coleman
Christopher E. Collier
David J. Collins
Joseph J. Cook
Giovanni Cunningham
Ronald Deese
Richard E. Derragon
Terri Derragon
Jimmy Doolittle
Gabriel Duran
Jeffrey Ealy
Margo Ealy
George Ellis
Frank Flowers
Ronald Fritz

Joseph Goldade
Louis Gonzalez
DeWayne Greene
Brian Greenleaf
Jay G. Hanson
Mark A. Hart
Terrence Hicks
James E. Higgs
Daniel Hollins
Barry Hopkins
Thomas C. Istre
Matthew Johnson
Randy Jones
Franklin Jones
Dawn Keller
Lloyd Kenebrew
Derrick Lee Sr.
Steven Lindsey
Omar Lindsey
Charles Lundeby
Sean Madison
Paul R. Martin
Scott F. Maurin
Jeffrey McClelland
Jeff McDonald
Douglas M. McGowan
Joseph Meshkin
Peter J. Metzger
William Meyers
Kendrick Montgomery
Curtis L. Montgomery
Don L. Moore
Stephen Nixon
Edward K. Oden
Levar Osby
Joey Palmer
Jonathan Pauldo
Michael Phariss
Travis Pregler
Regina Price
Louis M. Ramirez
Sirena Rich
Latoya Richardson
Amanda Ronk
Raul A Rosales
Helen Ruppel

Denis Sandoval
Brian Saunders
Donald W. Sebens
Paul M. Sherrod
Andy S. Silva Portillo
Willie Sims
David Sloan
Jerry Smith
DeAngelo Smith
Edward Stanton
Jocelyn Tate
Bobby Terrazas
Lilirs Thibodeaux Jr.
Joseph Thompson
Ellis S. Tidwell
Michael Tolliver
Pedro A Torres
Patrick Toy
Michael L. Tucker
Duwayne Tucker
Shayenne A. Villa
Isiah Williams
Edward R. Wills
Jerry Worthy

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _21-2122_

Short Caption: _ERIC R. BRANT v. SCHNEIDER NATIONAL INC._

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [　] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3): _ERIC BRANT_

(2)　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court.

_MARTIN + BONNETT PLLC_　_GETMAN SWEENEY & DUNN PLLC_

(3)　If the party, amicus or intervenor is a corporation:

　i)　Identify all its parent corporations, if any; and

　　_N/A_

　ii)　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

　　_N/A_

(4)　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

　　_N/A_

(5)　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

　　_N/A_

Attorney's Signature: _E. Tuddenham_　Date: _June 29, 2021_

Attorney's Printed Name: _EDWARD TUDDENHAM_

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** _____ **No** _X_

Address: _23 Rue du Laos_

_75015 PARIS FRANCE_

Phone Number: _+33 06 84 79 89 30_　Fax Number: _____

E-Mail Address: _etudden@prismnet.com_

rev. 12/19 AK

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ............................................................. i

TABLE OF AUTHORITIES ................................................................................. xix

JURISDICTIONAL STATEMENT ........................................................................... 1

ISSUES PRESENTED .......................................................................................... 2

STATEMENT OF THE CASE .................................................................................. 3

Facts alleged in Plaintiff's First Amended Complaint (FAC) (SA4-43; Doc. 63) ................ 3

Course of Proceedings ..................................................................................... 8

SUMMARY OF THE ARGUMENT ......................................................................... 13

ARGUMENT .................................................................................................... 17

I.      STANDARD OF REVIEW ....................................................................... 17

II.     PLAINTIFF PLAUSIBLY PLED A CLAIM FOR MINIMUM WAGE UNDER  THE FLSA AND WISCONSIN LAW ......................................................... 18

      A.     The FAC Plausibly Alleges that Brant Was an Employee .......................... 18

           1.     The FAC plausibly alleges Schneider's control over Plaintiff .......... 19

           2.     The FAC plausibly alleges that Plaintiff had no opportunity for profit or loss based on his managerial skill ....................................... 21

           3.     The FAC plausibly alleges that Plaintiff had no meaningful investment relative to that of Schneider. ............................................. 24

           4.     The FAC plausibly alleges that Plaintiff's skills were indistinguishable from the company drivers whom Schneider classified as employees ..................................................................... 26

           5.     The FAC plausibly alleges relative permanence of Plaintiff's job ... 27

           6.     Drivers like Plaintiff are an integral part of Defendants' business ............................................................................................ 28

      B.     The District Court Dismissed Plaintiff's Wage Claims Based on an Erroneous Legal Standard ............................................................. 30

III.     THE FAC PLAUSIBLY ALLEGES A CLAIM FOR UNJUST ENRICHMENT ....... 32

IV.    THE FAC PLAUSIBLY ALLEGES CLAIMS UNDER TILA ....................................40

CONCLUSION ........................................................................................................48

CERTIFICATE OF COMPLIANCE .........................................................................50

CIRCUIT RULE 30(d) STATEMENT .......................................................................51

CERTIFICATE OF SERVICE ...................................................................................52

# TABLE OF AUTHORITIES

*Acosta v. Jani-Kin of Okla., Inc.,*
  905 F.3d 1156 (10th Cir. 2018).................................................................31

*Aetna Freight Lines, Inc. v. NLRB,*
  520 F.2d 928 (6th Cir. 1975)...................................................................29

*Alexander v. FedEx Ground Package Sys., Inc.,*
  765 F.3d 981 (9th Cir. 2014).............................................................20, 28

*Arjay Inv. Co. v. Kohlmetz,*
  101 N.W.2d 700 (Wis. 1960)...............................................................33, 38

*Arriaga v. Fla. Pacific Farms,*
  305 F.3d 1228 (11th Cir. 2002)................................................................39

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ....................................................................17, 19, 32

*Baker v. Flint Eng. & Const. Co.,*
  137 F.3d 1436 (10th Cir. 1998).............................................................26, 27

*Barrentine v. Ark.-Best Freight Sys., Inc.,*
  450 U.S. 728 (1981) ................................................................................30

*Bartels v. Birmingham,*
  332 U.S. 126 (1947) ..........................................................................13, 18

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ....................................................................17, 19, 32

*Berger v. Perry's Steakhouse of Ill., LLC,*
  430 F. Supp. 3d 397 (N.D. Ill. 2019) .....................................................40

*Brock v. Mr. W. Fireworks, Inc.,*
  814 F.2d 1042 (5th Cir. 1987).................................................................24

*Brooklyn Savings Bank v. O'Neil,*
  324 U.S. 697 (1945) ................................................................................30

*Carter v. Paschall Truck Lines, Inc.,*
  324 F. Supp. 3d 900 (W.D. Ky 2018) .....................................................47

*Cleary v. Philip Morris Inc.,*
  656 F.3d 511 (7th Cir. 2011)...................................................................38

*Coady v. Cross Country Bank,*
729 N.W.2d 732 (Wis. App. 2007) ........................................................ 35

*Collinge v. Intelliquick Deliv., Inc.,*
2015 WL 1299369 (D. Ariz. Mar. 23, 2015) .................................... 20, 21

*Cromwell v. Driftwood Elec. Contractors,*
348 F. App'x 57 (5th Cir. 2009) ....................................................... 27, 28

*Davis v. Colonial Freight Sys., Inc.,*
2017 WL 11572196 (E.D. Tenn. Nov. 22, 2017) ....................... 22, 25, 25, 47

*DeRolf v. Risinger Bros. Transfer, Inc.,*
259 F. Supp. 3d 876 (C.D. Ill. 2017) ............................... 27, 32, 47, 48

*Doe v. Swift Transp.,*
2017 WL 67521 (D. Ariz. Jan. 6, 2017) ........................................ *passim*

*Doe v. Swift Transp. Co.,*
2017 WL 735376 (D. Ariz. Feb. 2, 2017) ........................................... 37

*Donovan v. Sureway Cleaners,*
656 F.2d 1368 (9th Cir. 1981) ............................................................ 24

*Doty v. Elias,*
733 F.2d 720 (10th Cir. 1984) ............................................................ 20

*Dowd v. Directv, LLC,*
2016 WL 28866 (E.D. Mich. Jan. 4, 2016) ........................................ 24

*Fox v. TransAm Leasing, Inc.,*
2017 WL 2080588 (D. Kan. May 15, 2017) .................................... 45, 46

*Geinosky v. City of Chicago,*
675 F.3d 743 (7th Cir. 2012) ............................................................... 9

*Gill v. City of Milwaukee,*
850 F.3d 335 (7th Cir. 2017) .............................................................. 17

*Gunn v. Stevens Sec. & Training Servs., Inc.,*
2019 WL 2502019 (N.D. Ill. June 17, 2019) ..................................... 31

*Hallinan v. Fraternal Order of Police Chi. Lodge 7,*
570 F.3d 811 (7th Cir. 2009) .............................................................. 17

*Hirst v. Skywest, Inc.,*
  910 F.3d 961 (7th Cir. 2018)...................................................................32

*Horist v. Sudler & Co.,*
  941 F.3d 274 (7th Cir. 2019)...................................................................38

*In re Arctic Exp. Inc.,*
  636 F.3d 781 (6th Cir. 2011)...................................................................46

*In re McAtee,*
  126 B.R. 568 (N.D. Iowa 1991) ...............................................................22

*Keller v. Miri Microsystems, LLC,*
  781 F.3d 799 (6th Cir. 2015)...................................................................31

*Kisting v. Gregg Appliances, Inc.,*
  No. 16-CV-141, 2016 WL 5875007 (E.D. Wis. Oct. 7, 2016)...........................33, 38

*Le v. Kohls Dep't Stores, Inc.,*
  No. 15–CV–1171, 2016 WL 498083 (E.D. Wis. Feb. 8, 2016) ........................33, 38

*Lindquist Ford, Inc. v. Middleton Motors, Inc.,*
  557 F.3d 469 (7th Cir. 2009), *as amended* (Mar. 18, 2009) ....................................39

*Luxama. v. Ironbound Express, Inc.*
  2021 WL 1153145 (D.N.J. Mar. 26, 2021), *recons. denied*, 2021 WL 3630290......................45

*Max Trucking LLC v. Liberty Mutual Ins. Corp.,*
  802 F.3d 793 (6th Cir. 2015)...................................................................25

*Mervyn v. Nelson Westerberg, Inc.,*
  2012 WL 6568338 (N.D. Ill. Dec. 17, 2012) ...............................................47

*Montana v. JTK Restors., LLC,*
  No. 14-cv-487, 2015 WL 5444945 (E.D. Wis. Sept. 14, 2015)..............................18

*Murillo v. Kohl's Corp.,*
  197 F. Supp. 3d 1119 (E.D. Wis. 2016) ...............................................33, 38

*Narayan v. EGL,*
  616 F.3d 895 (9th Cir. 2010)...............................................................22, 28, 31

*Nelson v. Signor Trucking, Inc.,*
  2010 WL 3307288 (D. Neb. Aug. 19, 2010)...............................................47

*Owner Operator Indep. Drivers Assn. v. Landstar Sys. Inc.*,
　622 F.3d 1307 (11th Cir. 2010).........................................................................47, 48

*Perez v. Supermaid, LLC*,
　55 F. Supp. 3d 1065 (N.D. Ill. 2014) ...........................................................20

*Pope v. Espeseth, Inc.*,
　228 F. Supp. 3d 884 (W.D. Wis. 2017)..........................................................18

*Real v. Driscoll Strawberry*,
　603 F.2d 748 (9th Cir. 1979).........................................................................26

*Rujawitz v. Martin*,
　561 F.3d 685 (7th Cir. 2009).........................................................................17

*Ruiz v. Affinity Logistics Corp.*,
　754 F.3d 1093 (9th Cir. 2014)...................................................................25, 29

*Sakacsi v. Quicksilver Deliv. Sys. Inc.*,
　2007 WL 42198984 (M.D. Fla. Nov. 28, 2007) ...........................................20

*Schultz v. Capital Intern. Sec., Inc.*,
　466 F.3d 298 (4th Cir. 2006)..........................................................................20

*Sec'y of Lab., U.S. Dep't of Lab. v. Lauritzen*,
　835 F.2d 1529 (7th Cir. 1987) ............................................................... *passim*

*Smith v. RecordQuest, LLC*,
　380 F. Supp. 3d 838 (E.D. Wis. 2019) ..........................................................39

*St John's United Church of Christ v. City of Chicago*,
　502 F.3d 616 (7th Cir. 2007)..........................................................................17

*Tamayo v. Blagojevich*,
　526 F.3d 1074 (7th Cir. 2008).........................................................................17

*Time Auto Transp. v. NLRB*,
　377 F.3d 496 (6th Cir. 2004)..........................................................................20

*Tobin v. Anthony-Williams Mfg.*,
　196 F.2d 547 (8th Cir. 1952)..........................................................................25

*United States v. Lewis*,
　41 F.3d 1209 (7th Cir. 1994).....................................................................26, 27

*United States v. Silk,*
  331 U.S. 704 (1947) ...................................................................31

*Usery v. Pilgrim Equip. Co.,*
  527 F.2d 1306 (5th Cir. 1976) ............................................ 23-24

*Wis. Auto Title Loans, Inc. v. Jones,*
  714 N.W.2d 155 (2006) .........................................................35, 37

**Statutes, Rules & Other Authorities**

28 U.S.C. § 1291 .............................................................................1

28 U.S.C. § 1331 .............................................................................1

28 U.S.C. § 1337 .............................................................................1

28 U.S.C. § 1367 .............................................................................1

28 U.S.C. § 1367(a) .......................................................................1

28 U.S.C. § 2201 .............................................................................1

28 U.S.C. § 2202 .............................................................................1

29 U.S.C. § 203(g) .........................................................................18

29 U.S.C. § 216(b) .........................................................................1

49 U.S.C. § 14704 .........................................................................1

29 C.F.R. § 531.35 .......................................................................39

29 C.F.R. § 531.35(b) .................................................................39

49 C.F.R. § 376.12 .......................................................................41

49 C.F.R. § 376.12(g) .................................................................41

49 C.F.R. § 376.12(h) .................................................................42

49 C.F.R. § 376.12(k) .................................................................43

49 C.F.R. § 376.12(k)(1) ...........................................................43

49 C.F.R. § 14704(a) ...............................................15, 16, 47, 48

49 C.F.R. § 14704(a)(1) .............................................................45

Fed. R. Civ. P. 8(a)(2) .................................................................................32

Fed. R. Civ. P. 12(b)(6) ............................................................... *passim*

47 Fed. Reg. 51136, 1982 WL 146684 (Nov. 12, 1982) ..........................................46

# JURISDICTIONAL STATEMENT

The district court had jurisdiction as a civil action arising under the laws of the United States pursuant to 28 U.S.C. § 1331. Specifically, the action was brought under 29 U.S.C. § 216(b) of the Fair Labor Standards Act, and 49 U.S.C. § 14704. Jurisdiction over Plaintiff's claims for declaratory relief was conferred by 28 U.S.C. §§ 2201 and 2202. The district court further had jurisdiction over the subject matter under 28 U.S.C. § 1337 because the claims arise under federal laws regulating interstate commerce. The district court had supplemental jurisdiction over the state law claims by virtue of 28 U.S.C. § 1367, including § 1367(a). The district court had jurisdiction over the claims of the Opt-In Plaintiffs by virtue of their having filed written consent to sue pursuant to 29 U.S.C. § 216(b).

This appeal is taken from the final decision of the U.S. District Court for the Eastern District of Wisconsin entered on May 20, 2021, by the Honorable William C. Griesbach. A19. The United States Court of Appeals has jurisdiction to decide this case pursuant to 28 U.S.C. § 1291. The Notice of Appeal was filed with the District Court on June 17, 2021. SA1.[1]

---

[1] Citations to the record on appeal use the following abbreviations: "A" for the attached appendix, "SA" for the separate appendix, and "Doc." for the docket entry number in the District Court.

## ISSUES PRESENTED

1. Did the district court err by failing to rule that Plaintiff's First Amended Complaint plausibly pled claims under the FLSA and Wisconsin law?

The district court dismissed Plaintiff's minimum wage claims under the FLSA and Wisconsin law pursuant to Fed. R. Civ. P. Rule 12(b)(6) based on its conclusion that an Operating Agreement made Plaintiff an independent contractor despite Plaintiff's allegations that he was an employee based on the economic realities.

2. Did the district court err in failing to rule that Plaintiff's First Amended Complaint plausibly pled a claim for unjust enrichment under Wisconsin law?

The district court dismissed Plaintiff's Wisconsin Unjust Enrichment claim pursuant to Rule 12(b)(6) based exclusively on the Operating Agreement's classification of Plaintiff as an independent contractor, when Plaintiff alleged many additional grounds for finding the Agreement to be procedurally and substantively unconscionable.

3. Did the district court err in failing to rule that Plaintiff's First Amended Complaint plausibly pled claims under the Truth in Leasing Act ("TILA")?

The district court dismissed Plaintiff's TILA claims on the ground that the Operating Agreement complied with TILA and because Plaintiff allegedly failed to plead that he suffered actual damages as a result of the alleged TILA violations.

## STATEMENT OF THE CASE

**Facts alleged in Plaintiff's First Amended Complaint (FAC) (SA4-43; Doc. 63):**

Defendant Schneider National Carriers, Inc. and its two wholly owned subsidiaries, Defendants Schneider National Inc. and Schneider Finance (all three hereafter collectively referred to as "Schneider") engaged in the business of hauling freight for Schneider's customers. Doc. 63 ¶¶ 3, 22, 24, 25, 27. Schneider operated approximately 10,052 trucks per month in 2020, of which approximately 74% were driven by drivers Schneider classified as employees (hereafter "company drivers") and 26% by individuals, including Plaintiff Eric Brant, that Schneider classified as "independent contractors" (hereafter "Drivers"). Doc. 63 ¶¶ 6, 47. Brant drove for Schneider from about December 2018 until August 2019. Doc. 63 ¶ 20.

Plaintiff alleged that Schneider engaged in an intentional scheme to misclassify Drivers as independent contractors in an attempt to obtain the benefits of controlling Drivers like employees, while depriving Drivers of all federal and state protections for employees and gaining a competitive advantage over other trucking companies that properly classify their drivers. Doc. 63 ¶¶ 1, 8, 10, 129. Pursuant to this misclassification scheme, Schneider paid Drivers less than the minimum wage required by federal and state law, was unjustly enriched, and violated the Truth in Leasing Act. Doc. 63 ¶ 130.

Plaintiff and other Drivers that Schneider classified as independent contractors entered into form "Operating Agreements" with Schneider by which the Driver agreed

(i) to lease his or her truck to Schneider and grant Schneider "exclusive possession, control, and use" of the truck for the duration of the Operating Agreement, (ii) to use the truck leased to Schneider to haul for Schneider and (iii) to pay for all costs of operating the truck while doing so. Doc. 63 ¶¶ 59, 60. Copies of the form Operating Agreements signed by Plaintiff Brant appear at Doc. 71-2 & 71-3. Schneider agreed to offer loads to Drivers but was under no obligation to offer any minimum amount of freight. Doc. 63 ¶ 85. Many Drivers, including Plaintiff, did not own a truck or have the credit to obtain one. Doc. 63 ¶ 61. To induce these Drivers to enter into an Operating Agreement, Schneider offered to lease them a truck for no money down, no payments for the first weeks of work and no other capital investment, using a form "Lease". Doc. 63 ¶¶ 61-62. A copy of the form "Lease" by which Schneider leased a truck to a Driver appears at Doc. 71-4. The Operating Agreement and Lease were presented to Drivers as a single non-negotiable package totaling more than 100 pages of fine print. Doc. 63 ¶¶ 72, 73. Schneider did not explain the documents and did not give Drivers adequate time to review them. Doc. 63 ¶ 76. By signing the package, Drivers obtained a truck from Schneider and leased it back to Schneider all in one transaction. Doc. 63 ¶¶ 62, 73.

As further inducement for Drivers to enter into the Operating Agreement, Schneider offered to advance all costs of operating the truck subject to deduction from the Drivers' earnings; in this way Drivers could drive indefinitely with no out-of-pocket investment as long as Schneider continued to assign sufficient loads. Doc. 63 ¶ 63, 79.

Once signed, the Operating Agreement classified Drivers as independent contractors, Doc. 63 ¶ 80, and further provided that if a Driver filed any court action claiming that he was an employee, he or she would be required to indemnify Schneider for all costs, including attorney's fees, that Schneider incurred as a result of such claim. Doc. 63 ¶ 154(g); Doc. 71-2 ¶ 8. It also provided that if a Driver were determined to be an employee by a court, the entire operating agreement would be rescinded retroactively to the date it was signed and the Driver would owe Schneider all sums received under the contract. Doc. 63 ¶ 154(h); Doc. 71-2 ¶ 24(e).

The FAC contains detailed factual allegations showing that notwithstanding the provisions of the Operating Agreement, Plaintiff and other Drivers were, as a matter of economic reality, employees of Schneider. Doc. 63 ¶¶ 80-129. Among other things, the FAC alleged that Schneider exercised complete control over all meaningful aspects of the transportation business in which Plaintiff worked, including advertising, solicitation and billing of customers, negotiations with customers regarding price, handling requirements, and pick-up and delivery times, and all infrastructure necessary for dispatching and monitoring Drivers and deliveries, including all necessary trailers, permits and licenses. Doc. 63 ¶ 81. Schneider also controlled the terms under which Plaintiff and other Drivers worked through its unilateral control over the terms of the Operating Agreement and its policies for implementing the Operating Agreement. Doc. 63 ¶ 82.

The FAC also alleged specific facts regarding Schneider's control over the manner in which Drivers hauled loads, including, *inter alia,* the fact that Schneider required Drivers to be trained in, and comply with, the same work rules and procedures applicable to Schneider's (employee) company drivers, Doc. 63 ¶¶ 66, 83, 84-86, 122, 127, monitored Drivers' speed, hard-braking incidents and other critical driving events, and disciplined Drivers for violations. *Id.* ¶¶ 123-24. The at-will termination provision in the Operating Agreement also gave Schneider the ability control Drivers' manner of work. *Id.* ¶ 115. That provision not only allowed Schneider to deprive a Driver of a job, but it also allowed it to put a Driver in default of his Lease at-will because termination of the Operating Agreement automatically constituted a default of the Lease. *Id.* ¶ 110. Upon default Schneider could repossess the truck and accelerate all remaining Lease payments. *Id.* ¶¶ 111, 112, 115.

Although the Operating Agreement purported to allow Drivers to drive for other carriers with Schneider's permission, Plaintiff specifically alleged that Schneider told him that he could not drive for other carriers. *Id.* ¶¶ 87-88. In addition, the conditions for obtaining Schneider's permission to drive for other carriers were so complex and onerous that Drivers could not, as a practical matter, carry loads for anyone other than Schneider, even if Schneider had permitted it. *Id.* ¶ 89 (detailing conditions). The Operating Agreement purported to allow Drivers to control other aspects of their work, but the FAC alleged that these "controls" were similarly illusory and gave Drivers no ability to make

a profit or loss through the exercise of business judgment. Doc. 63 ¶¶ 91-101 (discussing illusory nature of right to turn down loads, take time off, choose routes, and hire substitute drivers). To the contrary, Schneider exercised complete control over Driver earnings by controlling the loads it would assign, the price that it would pay for those loads, and by prohibiting Plaintiff and other Drivers from working for other carriers. *Id.* ¶ 90.

The only skill that Plaintiff and other Drivers brought to their work was their ability to drive a truck, the same ability possessed by Schneider employee company drivers. *Id.* ¶ 103. Schneider did not require Drivers to have the ability to operate as independent businesses and Plaintiff and other Drivers had no such ability. *Id.* ¶¶ 104-05.

Although the Operating Agreement set forth a one-year term, Schneider intended the work relationship with a Driver to continue indefinitely on satisfactory performance, and used various means to force Drivers to renew their contracts. *Id.* ¶¶ 107-14.

The FAC alleged that Plaintiff and other Drivers were not in business for themselves; rather, they were only able to work by virtue of the loads Schneider offered them, Schneider's credit, and Schneider's willingness to advance all costs of operating the truck, Doc. 63 ¶ 116, including making advances when a Driver's earnings were insufficient to cover the costs previously advanced by Schneider, *id.* ¶ 118.

Schneider paid Plaintiff and other Drivers through a weekly settlement sheet that, after taking deductions for fuel, insurance, taxes, tolls, ferry fees, equipment maintenance and repair, taxes, licensing fees and, where applicable, Lease payments, frequently left Drivers owing Schneider money despite having worked all week. *Id.* ¶¶ 131, 132, 140-43. By way of example on the week of May 2, 2019, Plaintiff Brant drove over 3000 miles carrying five loads for Schneider and received a net settlement for the week of $0. *Id.* ¶ 144.

The FAC set forth specific allegations as to why the Operating Agreement and Lease were procedurally unconscionable. *Id* ¶ 153. It also alleged multiple ways in which the Operating Agreement and Lease were substantively unconscionable. *Id.* ¶ 154.

Finally, the FAC set forth specific allegations regarding Schneider's failure to comply with the provisions of the Truth in Leasing Act (TILA). *Id.* ¶¶ 155-63. Plaintiff asserted four causes of action based on the above allegations: (1) failure to pay minimum wage in violation of the Fair Labor Standards Act; (2) failure to pay minimum wage in violation of Wisconsin minimum wage law; (3) unjust enrichment under Wisconsin law; and (4) failure to comply with TILA.

**Course of Proceedings:**

The original complaint in this action was filed July 10, 2020. Doc. 1. Schneider moved to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) for failure to state a claim and attached the Operating Agreements and Lease signed by Plaintiff (which

Plaintiff referred to in the complaint) in support of their motion. Docs. 20-2, -3, & -4. With respect to the minimum wage claims, Schneider asserted that Plaintiff failed to state a cause of action because his allegations that he was an employee of Schneider contradicted the "express language of [the Operating Agreements]" and "**the agreements control**." Doc. 20-1 at 8 (emphasis in the original). Pursuant to *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012), Plaintiff attached to his opposition to the motion several declarations expanding on the facts in the complaint.

The district court considered the Operating Agreement but refused to consider the declarations to the extent they set forth facts inconsistent with the Operating Agreement. A4. Instead of analyzing Plaintiff's allegations regarding the right to control retained by Schneider, the district court focused on the controls that the Operating Agreement purported to give to Plaintiff. A5-6. The district court refused to credit Plaintiff's allegations in the complaint and his declarations that many of these contract rights were illusory. A7-8. Instead, the court made the unsupported factual finding that while "economic reality made exercising rights that Brant undoubtedly had under the [Operating Agreement] difficult," Plaintiff could not "transform his independent contractor status into statutory employee status merely by *choosing* to not exercise the rights that he has been given. . . . Defendants cannot be held responsible for Brant's *decision* whether or not to exercise those rights." A8 (emphasis added). As for Plaintiff's allegation that he was entirely dependent on the loads that Schneider assigned him for

his livelihood, the court simply noted that that allegation "directly conflicts with the terms of the [Operating Agreement]. The agreement specifically allows Brant to drive for other carriers and for any other person or entity, so long as Brant obtains consent from [Schneider]." A9.

Similarly, despite Plaintiff's allegations to the contrary, the court made a factual finding that Plaintiff had "the ability to recruit new customers and drivers to assist him in increasing his profitability." *Id.* The court found that Plaintiff's possession of a commercial driver license meant that the skill factor weighed in favor of independent status as did the one-year term in the Operating Agreement. A10. In so doing, the court ignored Plaintiff's allegations that Schneider's employee drivers had the same skill as Plaintiff and that Drivers employment was, in practice, indefinite because Schneider routinely renewed the Operating Agreements. A10-11.

The court ultimately concluded that the "plain . . . language of the [Operating Agreement]" properly classified Brant as an independent contractor because it gave him "control over his business and operations" and "ample opportunity to make a profit and loss. . . . While Brant may regret . . . not exercising his rights under the [Operating Agreement], that does not change the analysis of the issue." A11.

The court dismissed the Wisconsin unjust enrichment claim based on its finding that the Operating Agreement properly classified Plaintiff as an independent contractor and was, therefore, a valid enforceable contract that precluded an unjust enrichment

claim. A11-12. In so ruling, the district court ignored Plaintiff's allegations that the contract was procedurally and substantively unconscionable for reasons other than misclassifying Plaintiff. *See* A12.

The court dismissed the TILA claim based on its finding that Brant did not allege that he or other Drivers sustained damages because of the TILA violations; "[t]he complaint merely concludes that Brant and the other drivers were financially harmed by Defendant's failure to adhere to the TILA regulations." A13-14. The court also found that the Operating Agreement complied with TILA. A14-15.

After granting the motion to dismiss the complaint, the court gave Plaintiff thirty days to cure the defects in his pleading. A15. Plaintiff filed a timely First Amended Complaint ("FAC"), SA4-43, to address the court's concerns. The FAC expanded on Schneider's control over Drivers, and incorporated details the court refused to credit from the declarations. Doc. 63 ¶¶ 60-100, 110-28. For example, the FAC specifically recited that contrary to the Operating Agreement, Defendants advised Plaintiff and other Drivers that they were not permitted to drive for other carriers, *id.* ¶ 88, and it explained why, even if permission were granted, the requirements imposed on Drivers who sought to drive for other companies rendered it impossible to do so, *id.* ¶ 89. The FAC similarly offered specific allegations explaining why other contractual provisions relied on by the court in its original dismissal order were illusory and did not allow Drivers to act as independent economic entities, including the alleged right to turn down loads, Doc. 63 ¶¶ 91-96, to

hire substitute drivers, to choose their routes and the right to decide where to take breaks or obtain fuel, *id.* ¶¶ 97-100. Plaintiff added significant new allegations to his claim for unjust enrichment setting forth in detail the ways in which the Operating Agreement and Lease were procedurally and substantively unconscionable apart from merely misclassifying Drivers. *Id.* ¶¶ 153-54. Plaintiff also set forth specific allegations showing how he and other Drivers sustained damages because of Schneider's TILA violations and added allegations regarding the ways Schneider failed to comply with its TILA obligations. *Id.* ¶¶ 155-63.

Schneider moved to dismiss the FAC pursuant to Rule 12(b)(6) on essentially the same grounds as it had moved to dismiss the original complaint, arguing that "because the express language of [the Operating Agreement and Lease] contradict his allegations, the agreements control." Doc. 72-1 at 1. On May 20, 2021, the district court granted the motion, this time with prejudice. A17. The court reiterated the reasons why it had previously dismissed the FLSA and Wisconsin minimum wage claims and the Wisconsin unjust enrichment claim in the original complaint. A17-18. With respect to the TILA claim, the court recited only its holding regarding the failure to plead damages, not its holding regarding Schneider's compliance with TILA:

> [T]he Court dismissed Brant's TILA claim on the ground that he failed to allege a causal connection between Defendants' failure to provide certain information as required by TILA and his claim that he and other drivers were not paid enough.

A18. The court then concluded:

12

> The instant motion to dismiss raises the same issues as Defendants' first motion to dismiss. Although the amended complaint contains new factual allegations, the additional allegations do not cure the inadequacies noted by the Court. Therefore, Brant's allegations fail to state a claim upon which relief can be granted for the same reasons set forth in the Court's decision and order granting Defendants' motion to dismiss.

*Id.* The court entered judgment for Defendants on May 20, 2021. A19. Plaintiff filed a timely notice of appeal from that final judgment on June 17, 2021. SA1.

## SUMMARY OF THE ARGUMENT

Accepting Plaintiff's allegations as true, as the district court was bound to do, and evaluating them in light of the "economic reality" standard set forth in *Sec'y of Lab., U.S. Dep't of Lab. v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir. 1987), it is clear that Plaintiff plausibly alleged specific, non-conclusory facts from which a jury could reasonably find that Plaintiff was an employee of Schneider entitled to the protections of state and federal minimum wage laws. Plaintiff also properly alleged a failure to pay minimum wages, listing a specific week in which he drove 3000 miles and received no pay whatsoever.

The district court's contrary conclusion was based on a fundamental error of law insofar as it found that the terms of the Operating Agreement controlled over the allegations in the Amended Complaint. Under the FLSA, an "employee" is an individual who, as a matter of economic reality, is dependent on the business to which he renders service. *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)). This definition "is designed to defeat rather than implement contractual arrangements. . . . '[E]conomic reality' rather than contractual form is . . . dispositive." *Lauritzen*, 835 F.2d at 1544-45 (Easterbrook, J.,

concurring). Thus, whether the Operating Agreement indicates independent contractor status is not the question. The question is whether Plaintiff's factual allegations plausibly plead that the economic reality of his relationship with Schneider was one of dependence. The district court did not address that question.

The district court erred in dismissing Plaintiff's unjust enrichment claim on the grounds that the Operating Agreement and Lease precluded such a claim. While Plaintiff acknowledged that an *enforceable* contract would preclude an unjust enrichment claim, the FAC alleged that the Operating Agreement and Lease were procedurally and substantively unconscionable and therefore void or voidable. The district court rejected those allegations, finding that the Operating Agreement properly classified Plaintiff as an independent contractor and completely ignoring Plaintiff's detailed allegations regarding the many ways, in addition to misclassifying Plaintiff, in which the Operating Agreement was procedurally and substantively unconscionable. *See* Doc. 63 ¶ 153(a)-(j); Doc. 75 at 21-22. Those allegations were sufficient to plausibly allege that the contract was void or voidable.

Although the court did not address the issue, Schneider also argued that Plaintiff's unjust enrichment claim sought the same relief as Plaintiff's FLSA claim and was, therefore, preempted. However, the two claims are distinct. The unjust enrichment claim is based on the unconscionability of the contract and seeks restitution of all operating expenses Plaintiff paid on behalf of Schneider pursuant to the unconscionable contract.

By contrast, the FLSA claim is based on Plaintiff's status as an employee, and the FLSA permits Plaintiff to recover operating expenses only in weeks when those expenses pushed his weekly earnings below the FLSA minimum wage, and then only to the extent necessary to bring his wages up to the minimum-wage level. Because the claims are different, and seek markedly different relief, the unjust enrichment claim is not preempted by the FLSA.

With respect to the Truth In Leasing (TILA) claim, it is not clear from the court's order of dismissal whether it continued to believe that Schneider complied with all TILA disclosure requirements, as it found in its original dismissal order, or whether it found the FAC cured that failing. *Compare* A18 *with* A14-15. Either way, the FAC alleges that Schneider did not make the required disclosures in a number of respects. The FAC alleges that Schneider failed to provide Drivers with rated freight bills, and failed to provide Plaintiff with the documents necessary to determine the validity of charge-back items. Doc. 63 ¶¶ 156, 158. The FAC gives a specific example of a $1200 charge deducted by Schneider without explanation despite Plaintiff's efforts to obtain some explanation from Schneider. *Id.* ¶ 160. The FAC also alleged that Schneider failed to specify the amount of all escrow funds and gave a specific example of that failure as well. *Id.* ¶¶ 161-62.

The district court also erred in dismissing Plaintiff's TILA claims based on its conclusion that 49 C.F.R. § 14704(a) requires a plaintiff to allege that the TILA disclosure violations alone caused him injury. *See* A14, A18. According to the district court,

15

Plaintiff's allegations that Schneider's disclosure violations caused him financial harm because they prevented him from discovering and challenging Schneider's underpayments and overcharges were insufficient because the underpayments and overcharges were what caused the financial injury not the inadequate disclosures. *See* A13-14. The court's interpretation of § 14704(a) was wrong as a matter of law. The point of a disclosure statute such as TILA is to discourage employers from underpaying their workers and to provide workers with the information needed to challenge and correct underpayments when they are made and without having to go to court. For these reasons, courts addressing the issue have consistently found that allegations like Plaintiff's, that the failure to make adequate disclosures precluded Plaintiff from discovering and correcting erroneous charges—i.e., the very financial harm the statute was intended to protect against—are adequate to state a claim under TILA.

## ARGUMENT

### I.     STANDARD OF REVIEW

This Court reviews a motion to dismiss *de novo. Gill v. City of Milwaukee,* 850 F.3d 335, 339 (7th Cir. 2017). A Rule 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chi. Lodge 7,* 570 F.3d 811, 820 (7th Cir. 2009). As the Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." Even though *Twombly* (and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)) retooled federal pleading standards, notice pleading remains all that is required in a complaint. "A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir. 2008) (citations omitted). In making this assessment, the district court should accept as true all well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor. *See Rujawitz v. Martin,* 561 F.3d 685, 688 (7th Cir. 2009); *St John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir. 2007).

## II.    PLAINTIFF PLAUSIBLY PLED A CLAIM FOR MINIMUM WAGE UNDER THE FLSA AND WISCONSIN LAW.

### A.    The FAC Plausibly Alleges that Brant Was an Employee.

The FLSA defines "employ" as "to suffer or permit to work," 29 U.S.C. § 203(g), and the Supreme Court has interpreted this definition to mean that "employees are those who as a matter of economic reality are dependent upon the business to which they render services." *Lauritzen*, 835 F.2d at 1534 (7th Cir. 1987) (quoting *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)). Wisconsin law applies a similar definition to determine employee status for purposes of Wisconsin minimum wage. *Pope v. Espeseth, Inc.*, 228 F. Supp. 3d 884, 891 (W.D. Wis. 2017); *Montana v. JTK Restors., LLC*, No. 14-cv-487, 2015 WL 5444945, at *2 (E.D. Wis. Sept. 14, 2015).[2] The Seventh Circuit has adopted the following six-factor test for analyzing whether a worker is economically dependent on the business to which he renders service:

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

(2) the alleged employee's opportunity for profit or loss depending on his managerial skill;

(3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

(4) whether the service rendered requires a special skill;

(5) the degree of permanency and duration of the working relationship; and

(6) the extent to which the service rendered is an integral part of the alleged employer's business.

---

[2] In dismissing Plaintiff's FLSA and Wisconsin minimum wage claims, the district court treated the FLSA and Wisconsin law as applying the same definition of employee. *See* A5, A17-18.

*Lauritzen,* 835 F.2d at 1535. Each of the factors "must be applied with [the] ultimate notion in mind" that "dependence . . . indicates employee status." *Id.* at 1538. As set forth below, the facts alleged in Plaintiff's FAC, taken as true, plausibly show his dependence upon Schneider thereby satisfying *Twombly* and *Iqbal.*

### 1. The FAC plausibly alleges Schneider's control over Plaintiff.

The FAC alleges that Schneider exercised plenary control over the entire hauling operation in which Plaintiff worked, including advertising, solicitation of customers, negotiations with customers regarding price, handling requirements, and pick-up and delivery times and customer billing. Doc. 63 ¶ 81. It controlled all infrastructure necessary for dispatching and monitoring drivers and deliveries, and all necessary trailers, permits and licenses. *Id.* Schneider also controlled the terms under which Plaintiff and other Drivers worked by unilaterally dictating the terms of the Operating Agreement and Lease as well as the policies implementing the contract. *Id.* ¶ 82. In the Seventh Circuit, this kind of plenary control over all aspects of the business in which a plaintiff is exclusively employed is a clear indication of employee status. *Lauritzen,* 835 F.2d at 1536.

In addition to plenary control over the business and the terms under which Plaintiff worked, the FAC alleges that Schneider exercised detailed control of the manner and means by which Plaintiff and other Drivers operated. It did so by requiring Drivers to follow the same work rules, policies, and procedures, and customer requirements that Schneider required its employee drivers to follow, and by requiring Drivers to attend

training in those policies. Doc. 63 ¶¶ 81, 83, 99, 121.[3] Schneider also monitored the way Drivers drove, including their speed, hard-braking events, and hours of service and required Drivers to agree that Schneider could use the information it gathered through its monitoring for any purpose Schneider deemed advisable, including imposing discipline on Drivers. *Id.* ¶¶ 123-24. Schneider also required Drivers to take specific loads (despite the contract provision to the contrary). *Id.* ¶¶ 93-95. Most importantly, Schneider controlled drivers through its ability to terminate Drivers at-will. *Id.* ¶ 154. "The right to terminate at-will, without cause, is strong evidence of an employment relationship." *Alexander v. FedEx Ground Package Sys., Inc.,* 765 F.3d 981, 988 (9th Cir. 2014); *see also Time Auto Transp. v. NLRB,* 377 F.3d 496, 500 (6th Cir. 2004) (same); *Doty v. Elias,* 733 F.2d 720, 723 (10th Cir. 1984) (same); *Doe v. Swift Transp.,* 2017 WL 67521, at \*5 (D. Ariz. Jan. 6, 2017) (same).

The right to terminate at-will gave Schneider even greater control over Drivers, like Plaintiff, who leased their vehicles from Schneider. With respect to those Drivers, termination at-will not only deprived a Driver of her job but automatically put her in

---

[3] *See Schultz v. Capital Intern. Sec., Inc.,* 466 F.3d 298, 307 (4th Cir. 2006) (alleged employer's issuance of standard operating procedures to workers evidences control); *Collinge v. Intelliquick Deliv., Inc.,* 2015 WL 1299369, at \*2-3 (D. Ariz. Mar. 23, 2015) (training drivers in company policies, use of computer systems to monitor deliveries from pick-up to delivery, and right to discipline drivers for delivery errors indicates employer control by company); *Perez v. Supermaid, LLC,* 55 F. Supp. 3d 1065, 1076 (N.D. Ill. 2014) (training of worker by company indicates control); *Sakacsi v. Quicksilver Deliv. Sys. Inc.,* 2007 WL 42198984 (M.D. Fla. Nov. 28, 2007) (rejecting argument that controls imposed pursuant to customer requirements should not be considered because "[a]ny employer's business is, in essence, dictated by the needs of its customers.").

default of her lease which could result in immediate acceleration of all outstanding lease payments as well as other fees.[4] Doc. 63 ¶ 154(d). A company's ability to impose such draconian financial consequences on a worker at any time for any reason gives the company "full control over the terms of the relationship." *Swift Transp.*, 2017 WL 67521, at *8.

Although the Operating Agreement purported to give Drivers some minor controls over their operations, Schneider did not relinquish any control that would have allowed the Drivers to operate independently from Schneider. Doc. 63 ¶ 84.

In short, a jury could reasonably conclude from the facts alleged in the FAC that the degree of control retained by Schneider weighs in favor of employee status.

> **2.     The FAC plausibly alleges that Plaintiff had no opportunity for profit or loss based on his managerial skill.**

Plaintiff alleges Schneider controlled his income through its unilateral right to determine which, if any, loads to assign to Plaintiff, and the price that would be paid for those loads. Doc. 63 ¶ 90; *Collinge v. Intelliquick Deliv., Inc.*, 2015 WL 1299369, at *4-5 (D. Ariz. Mar. 23, 2015) (explaining that "the drivers' opportunity for profit or loss depends more upon the jobs to which IntelliQuick assigns them than on their own judgment and

---

[4] The Lease gives Drivers five days to enter into a new contract approved by Schneider, but such approval is contingent on "credit risk issues," including increasing the security deposit by whatever amounts Schneider deems necessary (usually not to exceed an additional $5000). Doc. 71-4 at 8, ¶ 19(L). But given the lack of credit and financial resources of Plaintiff and other Drivers, Doc. 63 ¶¶ 62-63, the requirement of additional security renders this option unavailable as a matter of economic reality.

industry"; and that "a worker's ability to simply work more hours is irrelevant" to the question of independence). The right to work for other carriers, which might have given Plaintiff some independence, was illusory as Schneider specifically informed Plaintiff that it would not grant him permission to drive for other carriers. *See* Doc. 63 ¶ 88; *Davis v. Colonial Freight Sys., Inc.*, 2017 WL 11572196, at *5 (E.D. Tenn. Nov. 22, 2017) (inability to work for others and inability to negotiate rates indicates driver had "minimal opportunity to affect his own profitability").

Other rights set forth in the Operating Agreement were similarly meaningless in terms of allowing Plaintiff to make a profit and operate independently. The right to choose routes and break times meant nothing in light of the strict pick-up and delivery times imposed by Schneider. Doc. 63 ¶ 99; *see Narayan v. EGL*, 616 F.3d 895, 904 (9th Cir. 2010) ("the ability to determine a driving route is simply a freedom inherent in the nature of the work and not determinative of the employment relationship."); *In re McAtee*, 126 B.R. 568, 572 (N.D. Iowa 1991) (discounting right to choose routes because "drivers were obligated to follow the directions of the employer as to where and when to transport the various loads.").

The ability to turn down loads or choose when to work was similarly illusory since, as a matter of economic reality, Schneider compelled Drivers to take specific loads when it wanted them to. Doc. 63 ¶¶ 93-95. Even when Plaintiff could turn down a load or take time off, the fact that he was prohibited from driving for other carriers meant that

such time off provided no economic benefit; taking time off or turning down a load was a personal prerogative that Schneider sometimes permitted but it was not one that allowed Plaintiff to work independently from Schneider. Doc. 63 ¶ 97. Besides, the need to make weekly lease payments and pay off Schneider's advances meant that Drivers could rarely afford to take time off. *Id.* In addition, Drivers who turned down loads had no way of knowing what would be offered next (or when) and thus had no way to determine whether rejecting a load would help or hurt financially. *Id.* ¶¶ 91-92; *see Swift Transp.*, 2017 WL 67521, at *12 (where drivers had no way of knowing whether turning down a load would result in a better or worse load, they were unable to exercise judgment in a way that allowed them to generate additional income).

The right to hire an assistant driver was also meaningless. Because Schneider was under no obligation to assign sufficient loads to keep the Driver busy, let alone an assistant driver, hiring a second driver simply risked incurring additional overhead. Doc. 63 ¶ 100. Plaintiff did not hire a second driver for this reason and few, if any, other Drivers did. *Id.*

Finally, contrary to the district court's view, the fact that Plaintiff and other Drivers were responsible for their operating costs (and could, as a result, lose money if Schneider did not offer enough loads to cover those costs) gave Plaintiff no independence or ability to make a profit. To the contrary, the obligation to pay those costs simply reflected Schneider's power to impose that burden on Drivers. *See Usery v. Pilgrim Equip. Co.*, 527

23

F.2d 1306, 1313 (5th Cir. 1976) (because workers cannot negotiate regarding the terms of their compensation, "the fact that operators accept responsibility for bad checks and theft losses does not show independence. Rather it shows that [the alleged employer] chose to place this added burden on its operators."); *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1372 (9th Cir. 1981) (same); *Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d 1042, 1050 (5th Cir. 1987) (same); *Dowd v. Directv, LLC,* 2016 WL 28866, at *3 (E.D. Mich. Jan. 4, 2016) ("A plaintiff in a laboring arrangement with potentially much to lose, but no profit to gain, is not independent.").

In sum, a jury could reasonably conclude from the facts alleged in the FAC that Plaintiff had no ability to make a profit or loss from the exercise of his own business judgment; like an employee, he was entirely dependent on Schneider for his income.

### 3. The FAC plausibly alleges that Plaintiff had no meaningful investment relative to that of Schneider.

The FAC alleges that Plaintiff had no investment in his equipment, Doc. 63 ¶ 102, and explains why in detail: His truck was obtained entirely on Schneider's credit and he was only able to operate it based on Schneider's credit. Doc. 63 ¶¶ 61- 63, 79, 102, 116. Where an alleged employer "advance[s] the driver's costs of leasing and maintaining their trucks and deduct[s] the advances from drivers' paychecks" such an arrangement is indicative of employee status, not the investment of an independent contractor. *Ruiz v. Affinity Logistics Corp.,* 754 F.3d 1093, 1104 (9th Cir. 2014); *see also Sureway Cleaners,* 656 F.2d at 1372 & n.9 (fact that operators paid monthly rent for their stores and monthly

charges for advertising and utilities did not constitute capital investment where these charges were advanced by the alleged employer and simply deducted from the operators' monthly earnings); *Max Trucking LLC v. Liberty Mutual Ins. Corp.,* 802 F.3d 793, 805 (6th Cir. 2015) (drivers who had to rely on company's credit to acquire their trucks and pay operating expenses were "effectively economically dependent on Max Trucking for their ability to operate as truckers"); *Tobin v. Anthony-Williams Mfg.,* 196 F.2d 547, 548-50 (8th Cir. 1952) (Drivers who "purchased" their trucks from their alleged employer for no money down and no pledged credit, and who paid off the truck through deductions from their earnings, were employees; they had "no substantial investment in their trucks and their ownership was no more than nominal."); *Swift Transp.,* 2017 WL 67521, at *14 (that company assisted drivers in obtaining their trucks and provided the necessary credit "through cost-advancing and leasing arrangements is evidence that plaintiff did not actually operate autonomously"). Moreover, because he was limited to driving for Schneider, Plaintiff's truck gave him no ability to act independently or make a profit. *See Davis,* 2017 WL 11572196, at *5 (inability to freely use leased truck to drive for other carriers indicates that investment, such as it was, did not confer any independence).

Further, any investment Plaintiff could be found to have made would be insignificant compared to Schneider's investment in the trucking operations in which Plaintiff worked. *Lauritzen,* 835 F.2d at 1536 (disproportionately large investment by alleged employer relative to worker is an indication that the worker is not independent);

25

*Baker v. Flint Eng. & Const. Co.*, 137 F.3d 1436, 1442 (10th Cir. 1998) (same); *Real v. Driscoll Strawberry*, 603 F.2d 748, 755 (9th Cir. 1979). Here too, a jury could reasonably conclude from the facts alleged that the investment factor weighs in favor of employee status.

4. **The FAC plausibly alleges that Plaintiff's skills were indistinguishable from the company drivers whom Schneider classified as employees.**

The FAC makes clear that the only skill Plaintiff had was the ability to drive a truck, exactly the same skill possessed by Schneider's employee drivers. Doc. 63 ¶ 103. Schneider did not care whether Drivers had any skill in operating an independent business, because, by virtue of Schneider's offer to arrange for and advance all operating costs, Drivers did not need such skills; like employee drivers the only skill they needed to work for Schneider was to drive a truck. *Id.* ¶¶ 64, 104, 105. A jury could reasonably conclude from these allegations that the skill factor also weighs in favor of employee status. *Swift Transp.*, 2017 WL 67521, at *14 (fact that Swift chose candidates for contract driving "based on experience, safety record, and ability to haul a certain number of miles, not their business reputation" indicates employee status).

The district court cited *United States v. Lewis*, 41 F.3d 1209, 1214 (7th Cir. 1994) for the proposition that the ability to drive a commercial truck tips the skill factor in favor of independent contractor status. A10. *Lewis*, however, is inapposite, as it was a criminal case upholding a sentence enhancement for use of a "special skill" in commission of an offense. 41 F.3d at 1214. For purposes of the enhancement statute, a "special skill" is

simply a "skill not possessed by a member of the public." *Id.* That definition would include employee truck drivers as well as independent drivers. Nothing in *Lewis* suggests that the ability to drive a truck is a special skill indicating independence for purposes of the FLSA, which is the issue here.

### 5.     The FAC plausibly alleges relative permanence of Plaintiff's job.

The Operating Agreement recited a one-year term, Doc. 63 ¶ 107, which is more than sufficient permanence to indicate employee status. *Cromwell v. Driftwood Elec. Contractors,* 348 F. App'x 57, 60-61 (5th Cir. 2009) (welders who worked on a steady and reliable basis for defendant for ten months were employees while welders who worked on specific projects lasting only a matter of weeks were not); *Baker v. Flint Eng'g & Constr. Co.,* 137 F.3d 1436, 1442 (10th Cir. 1998) (finding 'permanency' factor supported employee status even though workers only worked for two months). Rather than follow these cases, however, the district court relied on *DeRolf v. Risinger Bros. Transfer, Inc.,* 259 F. Supp. 3d 876 (C.D. Ill. 2017). A10-11. *Cromwell* and *Baker* make clear that *Derolf* erred when it found that any relationship with a fixed termination date, no matter how long, indicates independent status. 259 F. Supp. 3d at 883. The district court here, in turn, erred in relying on *Derolf* when finding the Operating Agreement's "fixed time period suggests the existence of an independent contractor status." A10-11. As *Cromwell* explains, the critical difference is whether a worker works on a steady and reliable basis over a substantial period of time (though that can be less than a year), or works on a project-by-project, on-

again-off-again basis. 348 F. App'x at 60-61. That is consistent with the general notion that contractors are hired to complete projects and employees are hired to provide steady work without regard to specific projects.

Moreover, Schneider expected Drivers to renew their contracts and, indeed, coerced them into doing so, rendering their employment indefinite. *Id.* ¶¶ 107-11. Schneider's SEC filings also make clear that retention of Drivers, like Plaintiff, was essential to their business model. *Id.* ¶ 106. A jury could reasonably conclude that this factor also favors employee status as an indefinite hiring period indicates employee status. *See Alexander v. FedEx Ground Package Sys., Inc.,* 765 F.3d 981, 996 (9th Cir. 2014) (automatic renewal of one-year terms on satisfactory performance weighs in favor of employee status); *Narayan v. EGL,* 616 F.3d 895, 903 (9th Cir. 2010) (same); *Swift Transp.,* 2017 WL 67521, at *5 (same).

### 6. Drivers like Plaintiff are an integral part of Defendants' business.

Schneider concedes that Plaintiff's work was integral to Defendants' operations and that this factor weighs in favor of employee status. Doc. 71-1 at 28. And Plaintiff's FAC makes specific factual allegations which, if proven at trial, would support a jury determination that all six *Lauritzen* factors weigh in favor of Plaintiff's employee status. That Plaintiff has alleged facts that would plausibly make him an employee is further supported by cases that have found, on the merits, that drivers working under circumstances similar to those alleged in the FAC were employees, even under the stricter

common law standard. *See, e.g., Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093 (9th Cir. 2014) (drivers who leased trucks with financial assistance of Affinity, who were restricted to driving for Affinity, and who had no ability to negotiate the rates paid by Affinity were employees under California common law); *Swift Transp.*, 2017 WL 67521 (finding drivers who are able to lease their trucks from Swift by virtue of Swift's credit and advances and who cannot drive for other companies to be common law employees of Swift); *Aetna Freight Lines, Inc. v. NLRB,* 520 F.2d 928 (6th Cir. 1975) (finding drivers who own their own trucks but who, *inter alia*, are required to drive exclusively for Aetna, and who are subject to "carefully prescribed time restrictions on deliveries" are common law employees of Aetna.).

Indeed, even Schneider recognizes that its working relationship with Drivers could plausibly be found to be one of employment. That is evident from ¶ 24(e) of the Operating Agreement, which provides:

> If . . . Owner Operator is determined to be an employee of Carrier by any federal, State, local . . . or other governmental body . . . this Agreement shall be rescinded back to the time of its formation. . . ." and that, in that event, the "Carrier shall . . . immediately owe Owner-Operator, for all work activities during the each week . . . only the then applicable federal minimum hourly wage . . . multiplied by Owner-Operator's total hours actually performing on-duty work for Carrier. . .

Doc. 71-2 at 41. There would have been no reason to include this provision in the contracts if Schneider did not believe it was at least plausible Drivers could be found to be employees.[5]

While Schneider clearly drafted the Operating Agreement to give the appearance of independent contractor status, it is the economic reality that controls. The economic reality alleged in the FAC would allow a jury to find Plaintiff to be an employee.

### B.     The District Court Dismissed Plaintiff's Wage Claims Based on an Erroneous Legal Standard.

The district court's contrary conclusion that the plain language of the Operating Agreement established Plaintiff's independent contractor status regardless of the allegations in his complaint was clear error. "FLSA rights cannot be abridged by contract or otherwise waived because that would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (quoting *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 707 (1945)). Indeed, the point of the "economic realities" test is that contractual recitations do <u>not</u> control employee status. An employer bent on misclassifying an employee can easily draft a contract that labels an employee an independent contractor and that contains provisions that create the appearance of independence while the "economic reality" is

---

[5] As Plaintiffs argued below, Doc. 45 at 20, this provision unlawfully purports to waive rights and remedies afforded by the FLSA and operates to create an unlawful chilling effect on the drivers' exercise of their rights.

quite the opposite. Nevertheless, as the Supreme Court noted long ago, "[c]ontracts, however skillfully devised," should not be permitted to alter who is an employer or employee as defined by the FLSA and other social welfare statutes. *United States v. Silk,* 331 U.S. 704, 715 (1947). Or, as Judge Easterbrook put it, "[t]he FLSA is designed to defeat rather than implement contractual arrangements. . . . '[E]conomic reality' rather than contractual form is indeed dispositive." *Lauritzen,* 835 F.2d at 1544-45 (Easterbrook, J., concurring); *see also Acosta v. Jani-Kin of Okla., Inc.,* 905 F.3d 1156, 1160 (10th Cir. 2018) (quoting Easterbrook, J, concurrence); *Keller v. Miri Microsystems, LLC,* 781 F.3d 799, 808 (6th Cir. 2015) (same); *Narayan,* 616 F.3d at 897 (same); *Gunn v. Stevens Sec. & Training Servs., Inc.,* 2019 WL 2502019, at *4 (N.D. Ill. June 17, 2019) ("Moreover, the independent contractor agreements themselves are of minimal relevance to the Court's determination of whether the security guards are employees.").

The district court also committed error of law when it purported to make factual findings in the context of a 12(b)(6) motion to dismiss. For example, the Court found that Plaintiff could solicit customers on his own and *chose* not to drive for other carriers, *id.* at 8, even though Plaintiff's pleading clearly alleged that Schneider would not allow him to do either of those things. In the 12(b)(6) context, the court is required to take Plaintiff's non-conclusory factual allegations as true and evaluate whether those allegations plausibly allege a claim. The district court is not supposed to make factual findings let

31

alone resolve factual disputes between the Plaintiff's allegations and the recitations in the Operating Agreement.

The district court cited repeatedly to *DeRolf v. Risinger Bros. Transfer, Inc.*, 259 F. Supp. 3d 876 (C.D. Ill. 2017), but *DeRolf* hardly supports the court's order of dismissal. To the contrary it suffers from the same free ranging fact finding based on the court's understanding of the plaintiff's operating agreement as the order of dismissal in this case. *See, e.g., id.* at 882 (rejecting allegation that drivers could not increase their revenues or recruit new customers because they had to accept only loads from Risinger because the operating agreement unambiguously contradicted that allegation).

For all of these reasons, the district court's conclusion that Plaintiff failed to plausibly allege facts supporting his FLSA and Wisconsin minimum wage law claim was error and must be reversed.[6]

### III.    THE FAC PLAUSIBLY ALLEGES A CLAIM FOR UNJUST ENRICHMENT

Plaintiff's third claim is for unjust enrichment under Wisconsin law. Schneider advanced two reasons for dismissing this claim, but the district court only addressed the

---

[6] Schneider also moved to dismiss the FAC on the grounds that Plaintiff had not adequately alleged a minimum wage violation. The district court did not rule on that ground, but the argument lacks merit. "In order to comply with the requirements of *Towmbly, Iqbal,* and Fed. R. Civ. P. 8(a)(2), a plaintiff alleging a minimum wage violation must provide sufficient factual context to raise a plausible inference that there was at least one workweek in which he or she was underpaid." *Hirst v. Skywest, Inc.*, 910 F.3d 961, 966 (7th Cir. 2018). It is not necessary to "plead specific dates and times," as long as a plaintiff "provide[s] some factual context that will nudge their claim from conceivable to plausible." *Id.* Plaintiff more than satisfied this standard by pleading that during the week of May 2, 2019, he drove over 3000 miles hauling five loads for Schneider and received $0.00 in pay for that week's work. Doc. 63 ¶¶ 143-44.

first—i.e., that the Operating Agreement and Lease barred the claim because no claim for unjust enrichment lies where there is a valid contract. The district court found that "[o]ther than asserting that misclassifying the drivers as independent contractors rendered the agreements unconscionable, Brant has not alleged facts from which it could be inferred that the Operating Agreement and Lease are void and unenforceable." Doc 58 at 12. Based on this mistaken view of the pleadings, the court dismissed the unjust enrichment claim based on its prior conclusion that the Operating Agreement and Lease properly classified Plaintiff as an independent contractor.

Dismissal of the unjust enrichment claim was error for several reasons: First, as shown above, the FAC plausibly alleged that the Operating Agreement misclassified him. Second, and more importantly, Plaintiff's FAC set forth a number of reasons why, in addition to misclassification, the Operating Agreement and Lease were voidable as procedurally and substantively unconscionable. *See Le v. Kohls Dep't Stores, Inc.*, No. 15–CV–1171, 2016 WL 498083, at *15 (E.D. Wis. Feb. 8, 2016) (declining to dismiss unjust enrichment claim where contract was potentially voidable); *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119, 1133 (E.D. Wis. 2016) (quoting *Arjay Inv. Co. v. Kohlmetz*, 101 N.W.2d 700, 702 (Wis. 1960) ("Under the theory of unjust enrichment it is immaterial whether the defendant and the plaintiff entered into a void contract.")); *Kisting v. Gregg Appliances, Inc.*, No. 16-CV-141, 2016 WL 5875007, at *6 (E.D. Wis. Oct. 7, 2016) ("[W]here there is not

an underlying, enforceable contract between the parties, an unjust enrichment claim may lie.").

With respect to procedural unconscionability, the FAC alleges:

(a) The Operating Agreement and Lease were pre-printed forms totaling over 100 pages of fine print drafted by Schneider and offered to drivers as a single non-negotiable package. Doc. 63 ¶¶ 72-75.

(b) There was substantial disparity in bargaining power between Drivers and Schneider. *Id.* ¶ 153(b). Schneider has annual revenues in excess of $4 billion dollars a year, *id.* ¶ 57, while Plaintiff and other Drivers had little formal education beyond high school, generally lacked business acumen and experience, and were entirely dependent on Schneider's credit and advances for their jobs, *id.* ¶¶ 61, 101, 153(d).

(c) Schneider told Drivers they had no ability to negotiate any terms of the Operating Agreement or Lease, and Drivers in fact did not have any ability to negotiate any terms. *Id.* ¶ 75.

(d) Schneider did not adequately explain the terms of the Operating Agreement or Lease to Plaintiff or other Drivers. *Id.* ¶ 153(d).

(e) Schneider did not give Drivers adequate time to review the documents before signing and precluded them from obtaining legal advice prior to signing. *Id.* ¶ 76.

These allegations are sufficient to plausibly allege procedural unconscionability under Wisconsin law. *Wis. Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155, 165-66 (2006) (stating the factors to be considered in establishing procedural unconscionability "include, but are not limited to, age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract."); *Coady v. Cross Country Bank,* 729 N.W.2d 732 (Wis. App. 2007) (finding arbitration agreement procedurally unconscionable on facts similar to those alleged by Plaintiff).

Plaintiff alleged the Operating Agreement and Lease were substantively unconscionable because:

(a) They allowed Schneider to deduct its own business expenses from Drivers' pay, resulting in Drivers earning less than minimum wage or even owing money to Schneider despite working long hours. The extraction of these business expenses "was unconscionable regardless of Defendants' misclassification of Drivers."

(b) They permitted Schneider to deny Drivers permission to work for other companies while simultaneously imposing no obligation upon Schneider to offer Drivers any amount of work.

(c) The interaction of the Operating Agreement and Lease allowed Schneider place a Driver in default of his or her Lease at will (by terminating the Operating Agreement at-will) and thereby impose all of the draconian financial penalties flowing from default (including making all Lease payments immediately due and owing while also allowing Defendants to repossess the truck at the Driver's expense), unless the Driver procures a new operating agreement within five days that Schneider deemed acceptable in its sole discretion.

(d) They impose such dire financial consequences on Drivers for terminating their contracts that Drivers are compelled to continue working for Schneider despite the fact that Schneider pays Drivers very little, or even negative amounts (wherein Drivers owe Defendants money) in some workweeks.

(e) They seek to prevent Drivers from pursuing their rights under the FLSA and purport to waive Drivers' rights protected by the FLSA by (1) requiring a Driver who claims to have been misclassified to indemnify Schneider for all costs arising from the claim including attorney's fees; and (2) providing that if a Driver is successful in establishing that he or she is an employee of Schneider, the Operating Agreement is automatically rescinded back to its inception, and the Driver is liable for repaying Schneider all monies received under the contract.

Doc. 63 ¶ 154.

These allegations, which should have been taken as true for purposes of the motion to dismiss, are more than sufficient to allege that the Operating Agreement was unreasonably one-sided in Schneider's favor as to be substantively unconscionable. *See Wis. Auto Title Loans, Inc.*, 714 N.W.2d at 166 ("No single, precise definition of substantive unconscionability can be articulated. Substantive unconscionability refers to whether the terms of a contract are unreasonably favorable to the more powerful party. The analysis of substantive unconscionability requires looking at the contract terms and determining whether the terms are 'commercially reasonable,' that is, whether the terms lie outside the limits of what is reasonable or acceptable."). As the Supreme Court of Wisconsin has noted, substantive unconscionability often takes the form of a creditor restricting a debtor's remedies or unduly expanding its own remedial rights. *Id.* at 172. Plaintiff's FAC alleges Schneider did just that.

The provisions placing all operating costs on Drivers and prohibiting them from working for others without Schneider's permission, while at the same time imposing no obligation of Schneider to provide loads, is facially one-sided and unconscionable. The provisions designed to dissuade Drivers from filing FLSA actions are similarly substantively unconscionable. *See Doe v. Swift Transp. Co.*, 2017 WL 735376 (D. Ariz. Feb. 2, 2017) (finding similar provisions in a truck operating agreement to "have a coercive effect [on drivers] who after reading the agreement have a well-founded fear that they may end up owing Swift money whether or not the case is ultimately resolved in their

favor. . . . The threat of owing money undoubtedly has a chilling effect . . ., particularly in the context of an employer-worker relationship such as here.").

Thus, Plaintiff plausibly alleged that the Operating Agreement and Lease were void or voidable as unconscionable and, as a result, those agreements do not preclude Plaintiff's unjust enrichment claim. *See Le*, 2016 WL 498083, at *15; *Murillo*, 197 F. Supp. 3d at 1133 (quoting *Arjay Inv. Co.*, 101 N.W. 2d at 702); *Kisting*, 2016 WL 5875007, at *7. As the sole ground cited by the Court for dismissing the unjust enrichment claim was its erroneous conclusion that the FAC failed to allege that the contracts were void or voidable, the court's order must be reversed.

Although the district court did not rule on the issue, Schneider also argued that the claim should be dismissed because it allegedly rests on the same improper conduct as Plaintiff's FLSA claim, and it is, therefore, preempted by the FLSA claim. However, Plaintiff's Wisconsin unjust enrichment claim is quite different from Plaintiff's FLSA claim.[7] The elements of an unjust enrichment claim in Wisconsin are: "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the

---

[7] As Plaintiff highlighted to the court below, Doc. 75 at 23 n.18, the cases Schneider cited to support the argument that the two claims are linked are cases interpreting Illinois law which does not recognize unjust enrichment as an independent cause of action. *See Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019) ("Unjust enrichment is not a separate cause of action under Illinois law."). But even under Illinois law, a plaintiff need only establish that retention of the benefit by the defendant would be "unjust" under the circumstances and is only tied to another cause of action to the extent "it rests on the same improper conduct." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

38

fact of such benefit; and (3) acceptance and retention by the defendant under circumstances such that it would be inequitable to retain the benefit without paying the value thereof." *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469 (7th Cir. 2009), *as amended* (Mar. 18, 2009) (citations omitted.); *Smith v. RecordQuest, LLC*, 380 F. Supp. 3d 838, 845 (E.D. Wis. 2019).

Plaintiff's unjust enrichment claim alleges that (1) he conferred a benefit on Schneider by paying all of the operating costs associated with the truck-costs that were, in reality, Schneider's business expenses; (2) Schneider was aware of that benefit since it was the one that drafted the contract and imposed the costs on Plaintiff; and (3) given the unconscionable nature of the contract, it would be inequitable under the circumstances for Schneider to retain those funds. Doc. 63 ¶¶ 182-83. That claim is quite different from Plaintiff's FLSA claim. Under the FLSA, Plaintiff can only recover business expenses paid on behalf of Schneider in weeks when the business expenses he paid brought his wages below the FLSA minimum and, even then, only to the extent that the expenses brought his wages below minimum wage. 29 C.F.R. §§ 531.35, 531.35(b); *Arriaga v. Fla. Pacific Farms*, 305 F.3d 1228, 1236 (11th Cir. 2002).

Plaintiff's unjust enrichment claim, by contrast, seeks reimbursement of all of the operating expenses he paid pursuant to the unconscionable contract because it would be inequitable to allow Schneider to retain those monies. This difference eliminates any concerns about preemption. Preemption by the FLSA only occurs to the extent an unjust

enrichment claim seeks the same relief as an FLSA claim. For example, in *Berger v. Perry's Steakhouse of Ill., LLC*, 430 F. Supp. 3d 397 (N.D. Ill. 2019), the court found that the plaintiff's unjust enrichment claim was preempted by the FLSA to the extent the claim sought unpaid minimum wages, *id.* at 419, but that the unjust enrichment claim for unpaid service charges (which the defendant had not shown were recoverable under the FLSA) was <u>not</u> preempted. *Id.* at 420.[8]

Accordingly, Plaintiff plausibly alleged a Wisconsin unjust enrichment claim that is in no way preempted by Plaintiff's FLSA claim.

## IV.    THE FAC PLAUSIBLY ALLEGES CLAIMS UNDER TILA.

The court dismissed Plaintiff's TILA claim on two grounds. First, it found that the Operating Agreement and Lease complied with TILA's disclosure requirements. Second, the court found that Plaintiff failed to allege "a causal connection between Defendants' failure to provide certain information as required by TILA and his claim that he and other drivers were not paid enough." A14.

With respect to the first ground, the court first discounted Plaintiff's allegation that Schneider failed to provide him with copies of the rated freight bills based on the statement in the Agreement that they would be made available on request. A15.

---

[8] The damages recoverable under the FLSA and unjust enrichment claims may overlap to a degree in weeks where Plaintiff earned less than minimum wage. Obviously, if Plaintiff succeeds on both claims, damages awarded under the FLSA and unjust enrichment must be calculated in a way to avoid double recovery. But that is a damage calculation issue that can be addressed much later in the case; it is not a reason to dismiss the unjust enrichment claim.

However, where, as here, a driver is paid a percentage of the gross revenue received by the carrier, TILA requires that "the lease must specify that the authorized carrier will give the lessor, <u>before or at the time of settlement</u>, a copy of the rated freight bill, or, in the case of contract carriers, any other form of documentation <u>actually used</u> for a shipment containing the same information that would appear on a rated freight bill." 49 C.F.R. § 376.12(g) (emphasis added). In addition, the regulation requires that the required lease provisions, including the aforementioned, "be adhered to and performed by the authorized carrier." § 376.12. Plaintiff alleged that Schneider did not adhere to or perform as required. Doc 63 ¶ 156 ("Defendants did not provide Plaintiff or other Drivers with the rated freight bill, or other documentation actually used for a shipment containing the same information that would appear on a rated freight bill.").

Nonetheless, the Court dismissed the claim because it found that "the [Operating Agreement] specifies . . . that Defendants would provide 'a copy of the rated freight bill (or a computer-generated summary)' to drivers when the driver's 'payment is based on a percentage of revenue.'" A14-15 (quoting Doc. 71-2 at 8-9, ¶ 4(e)). While the Operating Agreement language is ambiguous as to when, where, or under what circumstances Schneider would provide a copy of the rated freight bill or equivalent information, it certainly does not say that the information will be provided before or at the time of settlement. Nonetheless the Court interpreted the language to meet the TILA's "before or at the time of settlement" requirement, despite Plaintiff's clear allegation that Schneider

41

did not do so. The violation is not simply one of form as the information is necessary for Drivers to determine if Schneider paid them correctly, and Schneider's failure to provide it prevented Plaintiff from becoming aware of and contesting underpayments. Doc. 63 ¶ 157. Thus, the Court was wrong in dismissing this claim.

Nor does the Agreement comply with TILA requirements for disclosure of charge-backs. Section 376.12(h) requires the carrier to list the charge-backs it will make "together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge." 49 C.F.R. § 376.12(h). While the Agreement contains a list of charge-backs, the majority of the items merely list a method of computation that requires additional documents to determine the validity of the charge, and as Plaintiff alleged, Schneider did not provide copies of the documents needed to determine the validity of the charge. Doc. 63 ¶¶ 158-59. For example, the charge-back for "Medical Examination," states it is the "actual cost of medical examination." Doc. 71-3 at 64. Such a description requires that Defendants provide additional documentation of the "actual cost of medical examination," and TILA requires that Drivers "be afforded copies of those documents which are necessary to determine the validity of the charge." 49 C.F.R. § 376.12(h). Plaintiff specifically alleges that "Defendants failed to comply with TILA by failing to provide Plaintiff and other Drivers with the documents necessary to determine the validity of the charge-back items deducted from Drivers' pay." Doc. 63 ¶ 158. Plaintiff

also pled detailed allegations regarding a specific instance in which Defendants made a $1200 deduction from his bank account and refused to provide him with any information about the deduction, much less documentation for Plaintiff to verify the validity of such a charge. Doc. 63 ¶ 160. Again, the district court's finding that Plaintiff failed to allege a violation of TILA's charge-back requirements is simply contrary to the allegations in the complaint.

The district court's finding that the contract meets TILA requirements was also in error with respect to the provisions regarding escrow funds as required by 49 C.F.R. § 376.12(k). The Lease provided that it was an event of default by the Driver if the Operating Agreement was terminated for any reason and the Driver failed to (a) enter into a new independent contractor operating agreement with another Operating Carrier approved by Schneider, and (b) pay an unspecified increase in the Security Deposit amount. Doc. 71-1 at 37-38; Doc. 71-4 at 8, ¶ 19L. The Lease's failure to specify the amount of the Security Deposit increase Schneider was entitled to demand is a clear violation of 49 C.F.R. § 376.12(k), which requires specification of the "amount of any escrow fund or performance bond required to be paid by the lessor to the authorized carrier or to a third party." § 376.12(k)(1). This violation is not trivial; Plaintiff alleges that Schneider required a security deposit so high that it prevented him from moving to a new carrier, and when Plaintiff finally left, Schneider seized his truck for failing to pay the increased Security Deposit demanded. Doc 63 at ¶ 162.

The district court's ruling that Appendix A to the Lease, Doc. 72-4 at 11, states the amounts of applicable security deposits is a misreading of the document. Appendix A lists the "initial security deposit" due at the start of the lease ($0) and the "deferred security deposit" ($1000) which is to be paid in weekly installments of $100 during the term of the lease. *Id.* Neither of those amounts refers to the "additional security deposit" that Schneider retains the right to demand pursuant to ¶ 19(L) of the Lease, and which it did demand of Plaintiff. Doc. 71-4 at 8; Doc. 63 ¶ 162. Thus, the district court erred in finding that the Operating Agreement complied with TILA and that Plaintiff failed to plausibly allege a violation of that statute.

The district court's second ground for dismissal was that the TILA claims in Plaintiff's original complaint failed allege "a causal connection between Defendants' failure to provide certain information as required by TILA and his claim that he and other drivers were not paid enough." A14. The court erred in finding that the FAC did not cure that flaw despite the additional allegations in the FAC. A18. The FAC specifically alleged that because Schneider did not provide Plaintiff and other Drivers with the rated freight bill information required by TILA and failed to provide Plaintiff with the documents necessary to determine the validity of charge-back items, Doc. 63 ¶¶ 156, 158, Plaintiff and other Drivers were not aware of Schneider's underpayments and overcharges, and thus Plaintiff and other Drivers were unable to contest those underpayments and overcharges, *id.* ¶¶ 157, 159. The FAC provides a specific example of how Plaintiff tried

to get information to challenge a $1200 charge-back that Schneider took from his bank account but because he did not receive the required charge-back disclosure information, he could not challenge the deduction to his financial harm. Doc. 63 ¶ 160. Similarly, Plaintiff alleges that Schneider's failure to specify the amount of the additional security deposit that would be charged if he left Defendants' employment harmed him because, when he did decide to leave, Schneider demanded an excessive security deposit that he could not afford, resulting in the loss of his truck, a loss that caused him substantial financial harm. *Id.* ¶¶ 162-63.[9]

The district court's dismissal of the TILA claim in the FAC was error as these new and specific allegations establish the causal connection between Schneider's failure to comply with TILA and the underpayments received by Drivers. A18. TILA's mandatory disclosure requirements are imposed for two reasons: (1) when an employer is required to disclose information about freight bills and charge-backs, the employer is, presumably, less likely to try to intentionally underpay a worker; and (2) if the employer does inadvertently underpay the worker, the worker will be in a better position to challenge

---

[9] Plaintiff also seeks declaratory relief that Defendants' practices violated the TILA, and Plaintiff asks the Court to enjoin the illegal practices. Doc. 63 ¶ 38-39. Without such relief, Defendants are free to continue their illegal practices, thus undermining the purpose of TILA. Recognizing this, Congress specifically provided a private right of action for enforcement of TILA, including injunctive relief, under 49 U.S.C. § 14704(a)(1). *See Fox v. TransAm Leasing, Inc.*, 2017 WL 2080588, at *3-4 (D. Kan. May 15, 2017); *Luxama. v. Ironbound Express, Inc.* 2021 WL 1153145, at *22-24 (D.N.J. Mar. 26, 2021), *recons. denied*, 2021 WL 3630290. The appropriateness of such relief should await discovery and a ruling on the merits.

the violations and correct them. *See Fox v. TransAm Leasing, Inc.*, 839 F.3d 1209, 1211 (10th Cir. 2016) (the objective of TILA is full disclosure); *In re Arctic Exp. Inc.*, 636 F.3d 781, 795 (6th Cir. 2011) ("Congress's substantive purpose in authorizing the Truth-in-Leasing regulations was to protect owner-operators."); Final Rule, 47 Fed. Reg. 51136, 51137, 1982 WL 146684 (Nov. 12, 1982) (TILA was designed to "reduce the opportunity for abuses").

Schneider's failure to comply with the disclosure requirements caused Plaintiff's financial injury from underpayments and overcharges in precisely the way the statute sought to prevent that injury—i.e., Plaintiff was unable to understand, let alone challenge or correct the improper charges and underpayments without a lawsuit. *See Fox*, 839 F.3d at 1211 (quoting *In re Arctic Express*, 636 F.3d at 796) (TILA's objective is "to promote truth-in-leasing—a full disclosure between the carrier and the owner-operator of the elements, obligations, and benefits of leasing contracts signed by both parties; . . . to eliminate or reduce opportunities for skimming and other illegal or inequitable practices by motor carriers; and . . . to promote the stability and economic welfare of the independent trucker segment of the motor carrier industry.").

The fact that Schneider might have underpaid or overcharged Plaintiff even if it had made proper disclosures under TILA, does not change the fact that its failure to comply with TILA was a contributing cause of Plaintiff's injury. Schneider's TILA violations deprived Plaintiff of the ability to challenge Schneider's illegal actions in a timely way, which could have resulted in proper compensation, prevented hardships

caused by the underpayments or the demand for additional undisclosed security deposits in order to continue under the lease, and could have avoided requiring the worker to find and retain counsel and bring litigation.

Courts have had little trouble finding that such allegations are sufficient to allege damages under 42 U.S.C. § 14704(a). *See Carter v. Paschall Truck Lines, Inc.,* 324 F. Supp. 3d 900, 913 (W.D. Ky 2018) (allegation that plaintiff was underpaid and defendant failed to provide disclosure that would have confirmed the underpayment adequately alleges damages for purposes of § 14704(a)); *Davis v. Colonial Freight Sys., Inc.,* 2017 WL 11572196, at *7 (E.D. Tenn. Nov. 22, 2017) (same); *Mervyn v. Nelson Westerberg, Inc.,* 2012 WL 6568338, at *3 (N.D. Ill. Dec. 17, 2012) (same); *Nelson v. Signor Trucking, Inc.,* 2010 WL 3307288, at *1-2 (D. Neb. Aug. 19, 2010) (allegation that "[d]efendants made improper deductions from [plaintiff's] weekly compensation, causing her significant economic harm, and then failed to disclose documents verifying the validity of these deductions" adequately pleads TILA damages).

The district court cited no cases to explain its conclusion that the additional allegations in the FAC were still inadequate. Neither of the two cases cited in the court's initial order of dismissal, *Owner Operator Indep. Drivers Assn. v. Landstar Sys. Inc.,* 622 F.3d 1307, 1325 (11th Cir. 2010), and *DeRolf,* 259 F. Supp. 3d at 886, support the conclusion that Plaintiff's additional allegations are still insufficient. *Landstar* merely affirmed the district court's ruling that to properly allege TILA damages, "Plaintiffs must show that, but for

the violation, they would have made different choices, and, thereby, saved money." 622 F.3d at 1325. That is exactly what Plaintiff's FAC alleges—that had Schneider made the required disclosures, Plaintiff could have acted to challenge and/or avoid the underpayments and overcharges made by Schneider. Doc. 63 ¶¶ 156-57, 159-60, 162-63. In *DeRolf*, the court found the disclosures at issue to have been entirely accurate and noted that if injury resulted, it was not because the carrier was making inaccurate disclosures in violation of TILA. 259 F. Supp. 3d at 886. Thus, neither of these cases support the court's narrow reading of § 14074(a), and *Landstar* actually supports the conclusion that Plaintiff did properly allege damages.

Because the district court's reasons for dismissing the TILA claim ignored the clear allegations of the FAC regarding Schneider's failure to comply with TILA disclosure requirements, and because the district court applied the wrong standard for alleging damages, that dismissal should be reversed and Plaintiff should be permitted to proceed with his TILA claims.

## CONCLUSION

For all of the foregoing reasons, the Court should find that the First Amended Complaint plausibly asserts claims for violations of the FLSA, Wisconsin minimum wage, Wisconsin unjust enrichment, and TILA. Accordingly, the judgment should be reversed and the case remanded for further proceedings.

Respectfully submitted October 19, 2021.

/s/ *Michael J.D. Sweeney*

GETMAN, SWEENEY & DUNN, PLLC
Michael J.D. Sweeney
260 Fair Street
Kingston, NY 12401
(845) 255-9370
msweeney@getmansweeney.com

MARTIN & BONNETT, P.L.L.C.
Susan Martin
Jennifer Kroll
Michael M. Licata
4747 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
(602) 240-6900
smartin@martinbonnett.com

Edward Tuddenham
23 Rue Du Laos
Paris, France
33 684 79 89 30
etudden@prismnet.com

ATTORNEYS FOR PLAINTIFFS-
APPELLANTS

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32, because this document contains 12,485 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 12-point Palatino Linotype style font.

Dated:  October 19, 2021

/s/ Michael J.D. Sweeney
Michael J.D. Sweeney
One of the Attorneys for the Plaintiffs-
Appellants

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all materials required by

Circuit Rule 30(a) and (b) are included in the Appendix.


*/s/ Michael J.D. Sweeney*
Michael J.D. Sweeney

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2021, the Brief of Plaintiffs-Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Michael J.D. Sweeney*
Michael J.D. Sweeney

# APPENDIX

## TABLE OF CONTENTS TO SHORT APPENDIX

Decision and Order Granting Defendants' Motion to Dismiss, Doc. 58, filed January 19, 2021.................................................................................................... A-1

Decision and Order Granting Defendants' Motion to Dismiss, Doc. 83, filed May 20, 2021 ............................................................................................... A-17

Judgment in a Civil Case, Doc. 84, filed May 20, 2021 ..................................................... A-19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERIC R. BRANT,

    Plaintiff,

    v.           Case No. 20-C-1049

SCHNEIDER NATIONAL, INC.,
SCHNEIDER NATIONAL CARRIERS, INC.,
SCHNEIDER FINANCE, INC., and
DOE DEFENDANTS 1-10,

    Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiff Eric R. Brant brought this action against Defendants Schneider National, Inc., Schneider National Carriers, Inc., Schneider Finance, Inc., and Doe Defendants 1-10, seeking redress for alleged violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et. seq.*, the Truth in Leasing Act (TILA), 49 U.S.C. § 14704, and Wisconsin state law.  Brant alleges that Defendants failed to pay him statutorily required minimum wages and unlawfully deducted amounts from the wages he was paid in violation of the FLSA and Wisconsin state law.  Brant also alleges that Defendants violated TILA by requiring him and putative class members to enter into leases that violated provisions of TILA.  Before the court is Defendants' motion to dismiss the complaint. Dkt. No. 20.  For the following reasons, the motion will be granted.

### LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint to state a claim upon which relief can be granted. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  When reviewing a motion to dismiss under Rule 12(b)(6), the

A-1

court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the non-moving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir. 1997); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991).

Under the incorporation-by-reference doctrine, a court may consider documents attached to a Rule 12(b)(6) motion if "they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). In other words, the parties may submit documents mentioned in the plaintiff's complaint without converting the motion to dismiss into a motion for summary judgment. With these standards in mind, the court turns to the motion to dismiss.

## ALLEGATIONS IN THE COMPLAINT

Brant agreed to transport freight for Schneider National Carriers, Inc. (SNC), as a truck driver from December 2018 to August 2019. Compl. ¶¶ 20–21, Dkt. No. 1; Dkt. No. 20-2. Brant signed an Owner-Operator Operating Agreement (OOOA) with SNC on December 4, 2018, in which he agreed to use equipment owned or leased by him to transport freight made available by SNC. Compl. ¶ 57; Dkt. No. 20-2 at 1, 58. Brant also signed a separate contract with Schneider Finance, Inc. (SFI), on December 3, 2018, under which he agreed to lease from SFI a 2018 Freightliner tractor. Compl. ¶ 58; Dkt. No. 20-3. Brant alleges that those drivers who "do not otherwise have a truck to drive must sign both the lease and the OOOA in order to work for Defendants," and that the OOOA and Lease are presented together on a "take it or leave it basis." Compl. ¶¶ 60, 62. Brant asserts that drivers are not given adequate time to review the documents and are prevented from seeking legal advice before signing. *Id.* ¶ 63.

According to Brant, the OOOA improperly and purposefully misclassifies the drivers who sign it as independent contractors, materially benefiting Defendants. *Id.* ¶¶ 5, 8, 53. Brant alleges

A-2

that the terms of the contract, which will be discussed in more detail below, provide Defendants

with the ability to "exert all necessary control" over the drivers' work, so that the drivers are

economically dependent upon Defendants, and are not truly independent contractors.  *Id.* ¶ 66.

Thus, Brant alleges that he was in fact an employee of Defendants, not an independent contractor.

Brant further asserts that Defendants have failed to pay minimum wages in violation of the FLSA

and Wisconsin law.

> Next, Brant claims that the OOOA and Lease are unconscionable because they

> (a) call for the employment of Drivers but claim them to be independent contractors; (b) allow Schneider to terminate the OOOA and Lease at will but nevertheless require Drivers to continue to make lease payments; (c) shift Defendants' risk of business downturn to Drivers; (d) make Drivers responsible for the costs of carrying and maintaining Defendants' fleet; and (e) exact profits and reimbursements from Drivers who are, in fact, employees.

*Id.* ¶ 71.  This, Brant claims, gives rise to an unjust enrichment claim against Defendants, because

Defendants have been unjustly enriched by deducting wages from Brant and by extracting fees

that shift the costs of maintaining Defendants' fleet operations to the drivers.  *Id.* ¶ 119.

> Finally, Brant alleges that Defendants have violated TILA by failing to (1) specify the

compensation that the drivers were to receive for their work, (2) specify various charge-backs that

Defendants deducted from the drivers' pay, (3) provide drivers with copies of freight bills, and (4)

specify the amount of any escrow fund or performance bond required to be paid by lease drivers

who seek to terminate their OOOA and drive for another company.  *Id.* ¶ 121.  As a result, Brant

claims drivers have lost wages and other compensation due to them.  *Id.* ¶ 122.  Brant seeks to

bring these claims on behalf of himself and putative collective and class members.

## ANALYSIS

> As a preliminary matter, Defendants request that the court strike four declarations, one

from Brant himself and three others from opt-in plaintiffs, that Brant filed along with Brant's

response to Defendants' motion to dismiss.  *See* Dkt. No. 32-1–32-4.  These declarations should

be stricken and given no consideration, Defendants contend, because the court's determination of

a Rule 12(b)(6) motion to dismiss is based entirely upon the allegations of the complaint and

documents incorporated therein.  Citing *Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012),

Brant contends that consideration of the declarations is proper because the declarations elaborate

on the factual allegations contained in the complaint and illustrate the facts that Brant expects to

be able to prove.  Dkt. No. 32, at 4 n.3.  While a Rule 12(b)(6) motion must generally be based

"only on the complaint itself, documents attached to the complaint, documents that are critical to

the complaint and referred to in it, and information that is subject to proper judicial notice," the

Seventh Circuit has made clear that a party opposing a Rule 12(b)(6) motion "may submit materials

outside the pleadings to illustrate the facts the party expects to be able to prove." *Geinosky*, 675

F.3d at 745 n.1.  Thus, the court will not strike the declarations, as they are, at least to some extent,

illustrative of what Brant expects to be able to prove.  However, to the extent that the declarations

are inconsistent with the allegations contained in the complaint and the documents incorporated

therein, the court will defer to the complaint and incorporated documents.

### A.  FLSA and Wisconsin Law Claims

Defendants have moved to dismiss Brant's FLSA and state law claims on the ground that

Brant was properly classified as an independent contractor and, thus, those laws do not apply.

Although the determination of statutory employee status is a fact-intensive inquiry, it is "amenable

to a Rule 12(b)(6) analysis."  *See Derolf v. Risinger Bros. Transfer, Inc.*, 259 F. Supp. 3d 876, 879

(C.D. Ill. 2017) (citing *Berger v. Nat'l Collegiate Athletic Assoc.*, 843 F.3d 285, 294 (7th Cir.

2016)).  Because the court concludes that Brant was properly classified as an independent

contractor, Brant's FLSA and state law claims must be dismissed.

4

A-4

Under the FLSA, an employee is defined as "any individual employed by an employer."
29 U.S.C. § 203(e)(1). And under Wisconsin law, an employee is defined as "every individual
who is in receipt of or is entitled to any compensation for labor performed for any employer." Wis.
Stat. § 104.01(2)(a). "It is well recognized that under the FLSA the statutory definitions regarding
employment are broad and comprehensive in order to accomplish the remedial purposes of the
Act." *Secretary of Labor, U.S. Dept. of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987).
Courts have developed the "economic reality" test to discern whether an individual is a statutory
employee or an independent contractor. *Id.* at 1534–35. The following factors are to be considered
when determining the true nature of the working relationship:

> (1) the nature and degree of the alleged employer's control as to the manner in which
> the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending on his
> managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his
> task, or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship; and
>
> (6) the extent to which the service rendered is an integral part of the alleged
> employer's business.

*Id.* at 1535. No one factor by itself, or by its absence, is dispositive or controlling. *Id.* Brant bears
the burden of establishing that he "performed work for an employer and is therefore entitled to
compensation." *Berger*, 843 F.3d at 290.

### 1. The Nature and Degree of the Employer's Control

Defendants assert that the OOOA shows Brant exercised a vast amount of control over the
manner of his work. Among other things, Defendants point to the fact that the OOOA provides

5

A-5

that Brant "shall determine the manner, means and methods of performance of all Freight Transportation Services." Dkt. No. 20-3, ¶ 2(b).  Additionally, the OOOA states that Brant shall be responsible for wages, hours, meals, rest breaks, working conditions, management supervision; selecting, purchasing, leasing, financing, maintaining, operating, and insuring equipment; selecting all routes and properly weighing, inspecting, and measuring all shipments; and paying for the cost of fuel, fuel taxes, tolls, ferry fees, equipment maintenance, and fines.  *Id.* ¶ 2(b)(i)– (iv).  Defendants also point to the provision in the OOOA that states that Brant's business operations are independent of Defendants, such that Brant's operations are not subject to cancelation or destruction in the event the OOOA is terminated by either party.  *Id.* ¶ 2(b)(v). Under the OOOA, Brant also had the right to accept or reject shipments from Defendants, *id.* ¶ 1, and to provide transportation services for "any other person or entity, on whatever basis and whenever [Brant] chooses, provided that [Brant] complies" with various federal regulations.  *Id.* ¶ 3(b).

Brant counters that this factor weighs in favor of a finding of employee status because Defendants "exercise[] pervasive control over the operation as a whole."  He alleges that Defendants control advertising, employ the sales force that locates customers, negotiate terms and conditions under which freight will be shipped, and control the infrastructure necessary for assigning loads to drivers.  Furthermore, Brant contends Defendants exercise their control by requiring Brant to comply with Schneider's policies, providing drivers with delivery instructions, monitoring drivers' speed, location, route, and estimated time of arrival, and prohibiting drivers from working for any other carrier absent written consent from Defendants.  Brant asserts that, under the leasing agreement, Defendants wield a great deal of power over drivers who lease their equipment from Defendants, such that Defendants can place Brant in default of his lease simply

by exercising its right to terminate the agreement at will. Finally, Brant contends that many of the contract provisions in the OOOA are "illusory" and contribute nothing to driver independence.

The district court's decision in *Derolf v. Risinger Bros. Transfer, Inc.*, 259 F. Supp. 3d 876 (C.D. Ill. 2017), is instructive on this point. The plaintiffs in that case were also truck drivers who claimed they were misclassified as independent contractors. *Id.* at 879. In finding that the defendant did not control the manner in which the plaintiffs performed their work, the court looked to the plaintiffs' operating agreements with the defendant and observed that the agreements made clear that the plaintiffs "did not even have to engage in the 'work' themselves" and "could hire their own drivers to do so." *Id.* at 880. The court noted that it was "unaware of any traditional employer-employee relationship where an employer would ever allow an employee to use the employer's equipment for a competitor under any circumstances" or "where an employee can contract with a third party to perform the actual work of the employer." *Id.* at 880–81. This court, too, is unaware of any such employee-employer relationship.

The court concludes that Defendants' control over the manner in which Brant performed his work weighs in favor of finding independent contractor status. The OOOA provides for a variety of rights that allow Brant to exercise a significant amount of control over his own business. Brant was responsible for "selecting, purchasing, financing, maintaining, operating, and insuring" his equipment, was free to accept and reject work as he pleased, and was free to accept work from other companies, so long as he received written consent from Defendants. Brant was also free to hire his own employees and wouldn't be required to do any of the actual transportation himself. Compl. ¶ 24.

Brant argues that the question isn't "what the [workers] *could* have done that counts, but as a matter of economic reality what they actually *do* that is dispositive." *Brock v. Mr. W.*

*Fireworks*, 814 F.2d 1042, 1047 (5th Cir. 1987). The fact that the economic reality made exercising rights that Brant undoubtedly had under the terms of the OOOA difficult, however, is not enough to transform him into an employee. Economic reality commonly intrudes on what one may prefer to do. No doubt large retail sellers, like Wal-Mart, can dictate many of the terms under which producers of the goods it sells must operate. But this does not make them employees of Wal-Mart. Certainly, in some instances, it may be the case that what a worker actually *does* provides better indicia of his status than what he is entitled to do. But an independent contractor who is dissatisfied with the terms of his agreement may not transform his independent contractor status into statutory employee status merely by choosing to not exercise the rights that he has been given. To allow such a transformation would destroy the purpose of the agreement that both parties entered. Brant entered into a contract that gave him considerable control over his business. Defendants cannot be held responsible for Brant's decision whether or not to exercise those rights. The court thus concludes that this factor weighs in favor of a finding of independent-contractor status.

### 2. Opportunity for Profit and Loss

Next, Defendants argue that Brant was responsible for his own profitability, such that he was more akin to a business owner than an employee-driver for Defendants. Defendants assert that the OOOA permitted Brant to transport freight for other carriers after securing permission from Defendants and to accept or decline any specific deliveries offered by Defendants via Schneider's online portal. Dkt. No. 20-3, ¶¶ 1, 3(b), 4(g), 18. Defendants further note that Brant's ability to profit was largely dependent on how much freight he transported, what routes and decisions he took in completing loads, and whether he chose to employ additional drivers to increase his revenues. Brant argues that his right to recruit new customers was illusory, primarily

8

A-8

because he was unable to drive for other carriers and was entirely dependent on the loads offered by Defendants.

But Brant's argument directly conflicts with the terms of the OOOA. The agreement specifically allows Brant to drive for other carriers and for any other person or entity, so long as Brant obtains consent from Defendants. *Id.* ¶ 3(b). Again, as noted by the court in *Derolf*, the ability to recruit new customers "does not seem to be something within the tasks of a mere driver." 259 F. Supp. 3d at 882. Additionally, Brant was the sole person in control of how many loads he decided to take, how often he drove (subject to federal regulations), and whether or not he chose to employ additional drivers to increase profits. At bottom, employees generally do not enjoy such a level of control over their work and do not have the ability to increase their own profitability. Here, Brant chose how much he worked, had the ability to drive for other entities, and had the ability to recruit new customers and drivers to assist him in increasing his profitability. This factor also weighs in favor of Defendants.

### 3. Investment in Equipment or Materials or Employment of Workers

Defendants contend that this factor weighs in favor of independent contractor status because Brant was required to make a significant investment in his own equipment. Defendants note that, despite the fact that they leased Brant his equipment, Brant was still required to put up a significant capital investment and was responsible for making that decision. Additionally, Defendants point to the fact the Brant was responsible for all operating expenses related to the equipment that he owned or leased. Dkt. No. 20-3, ¶ 2(b)(iv). Brant, however, argues that the investment Brant made was "entirely a function of Schneider's efforts and credit."

Again, Brant's argument misses the mark. Brant was fully empowered to buy or lease his equipment from any provider, and he was not required to lease his equipment from Defendants.

*Id.* ¶¶ 2(b)(viii), 14.  Even if Defendants were, in effect, his only option from which to buy or lease equipment, Brant was still required under the OOOA and leasing agreement to take on considerable financial risk in order to operate the equipment and to cover operating expenses.  *Id.* ¶ 2(b)(iv).  Certainly, this is not a case where drivers were "simply given the trucks to complete their work." *Derolf*, 259 F. Supp. 3d at 883.  As observed by the court in *Derolf*, which addressed this same issue, "the whole set up may be unfair but there is little question that the system requires the drivers to take a huge risk and invest in their own ability to arrange for as much freight to be hauled so as to turn a profit." *Id.*  The court finds that to be the case here, and thus, this factor weighs in favor of Defendants.

### 4.  Other Factors

The factor of whether the service rendered requires a special skill weighs in favor of Defendants.  The court has little trouble reaching a conclusion on this issue, as the Seventh Circuit has concluded that driving commercial truck is a special skill.  *See United States v. Lewis*, 41 F.3d 1209, 1214 (7th Cir. 1994) ("[I]t requires no leap of logic to conclude that the skills necessary to operate an eighteen-wheeler justify enhancement under the section.  An over-the-road commercially employed truck driver is required to have a special operator's license.  Members of the general public would have more than a little trouble successfully maneuvering a loaded eighteen-wheeler along roads and through parking lots."); *see also Derolf*, 259 F. Supp. 3d at 883.

The degree of permanency and duration of the working relationship also weighs in favor of Defendants.  "Temporary relationships suggest independent contractor status while open-ended relationships suggest employee status." *Derolf*, 259 F. Supp. 3d at 883 (citing *Lauritzen*, 835 F.2d at 1537).  Here, the OOOA provides that the agreement shall be in effect for a fixed term of one

10

A-10

year and will not automatically renew.  Dkt. No. 20-3, ¶ 21.  This fixed time period suggests the existence of an independent contractor status.

Finally, there is no serious contention regarding the extent to which the service rendered is an integral part of the alleged employer's business.  It is clear that commercial truck driving is integral to Defendants' operation and business.  Thus, this factor weighs in favor of Brant, but it is hardly controlling.  Masons, plasterers, and roofers all perform services that are integral to home building.  Yet, most who provide such services operate their own businesses and are seldom within the employ of the home builder.

In sum, the court concludes that Brant was properly classified as an independent contractor.  Brant had a considerable amount of control over his business and operations, had ample opportunity to control his profit and loss, was required to invest considerable sums into his equipment and materials, and possessed a special skill requisite for performing the work.  All of this is plain from the language of the OOOA.  While Brant may regret the arrangement and may also regret not exercising his rights under the OOOA, that does not change the analysis of the issue.  Thus, Brant's FLSA and Wisconsin state law claims will be dismissed.

## B. Unjust Enrichment Claim

Defendants also assert that Brant's unjust enrichment claim must be dismissed.  To state an unjust enrichment claim under Wisconsin law, a plaintiff must allege "three elements: '(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof.'"  *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009) (quoting *Seegers v. Sprague*, 70 Wis. 2d 997, 1004, 236 N.W.2d 227 (1975)).  Defendants assert

that Brant's unjust enrichment claim fails as a matter of law because the parties' relationship is governed by an implied contract. Generally, "[t]he doctrine of unjust enrichment does not apply where the parties have entered into a contract," *Cont'l Casualty Co. v. Wis. Patients Comp. Fund*, 164 Wis. 2d 110, 118, 473 N.W.2d 584 (1991), as the parties have already bargained for the terms each is willing to accept, and no third person's sense of justice should upset the agreement into which they have freely entered.

Brant maintains that a claim for unjust enrichment is available because the OOOA and Lease are void or voidable for unconscionability. In particular, Brant alleges, "[t]he OOOA, individually and in combination with the Lease, is unlawful and unconscionable and unjustly enriches Schneider at the expense of Drivers, *inter alia*, insofar as they (a) call for the employment of Drivers but claim them to be independent contractors; (b) allow Schneider to terminate the OOOA and Lease at will but nevertheless require Drivers to continue to make lease payments; (c) shift Defendants' risk of business downturn to Drivers; (d) make Drivers responsible for the costs of carrying and maintaining Defendants' fleet; and (e) exact profits and reimbursements from Drivers who are, in fact, employees." Compl. ¶ 71. Other than asserting that misclassifying the drivers as independent contractors rendered the agreements unconscionable, Brant has not alleged facts from which it could be inferred that the OOOA and Lease are void or unenforceable. Because Brant's unjust enrichment claim only challenges the subject matter within the scope of the OOOA and lease agreement, it must be dismissed.

### C. TILA Claim

Defendants assert that Brant's TILA claim must also be dismissed. Brant alleges that Defendants violated TILA by failing to comply with the requirements set forth in its regulations. "A carrier 'is liable for damages sustained by a person as a result of an act or omission of that

carrier or broker in violation [of the regulations].'" *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1325 (11th Cir. 2010) (quoting 49 U.S.C. § 14704(a)(2)) (alterations in original).  Brant alleges that Defendants violated TILA by failing to (1) set forth the compensation that drivers were to receive for their work by failing to specify deductions from the drivers' compensation for accessorial amounts due; (2) clearly set forth chargebacks to drivers by failing to specify the reasons for accessorial amounts and insurance charged back; (3) provide drivers with copies of freight bills or other documents from which the drivers' compensation was calculated; and (4) set forth the amount of escrow fund or performance bond required to be paid by lease drivers.  Compl. ¶¶ 96–98.  Brant asserts that, as a result of Defendants' actions, Defendants caused the drivers financial injury and lost compensation.  *Id.* ¶ 99.

Defendants argue that Brant's TILA claim must be dismissed because he does not plead that he or any driver suffered any actual damages that resulted from the alleged TILA violations. Brant asserts that he was only required to allege that he and other drivers were "disadvantaged by a lack of transparency in their contractual relationship with Defendant, resulting in damages, specifically under-compensation."  Pl.'s Br. at 28, Dkt. No. 32 (quoting *Mervyn v. Nelson Westerberg, Inc.*, No. 11-C-6594, 2012 WL 6568338, at *3 (N.D. Ill. Dec. 17, 2012) (alterations omitted).  He alleges that the lack of transparency in the OOOA and Lease disadvantaged drivers in their contractual relationship with Defendants.  But TILA "requires owner-operators to show how they sustained damages because of the violations."  *Landstar*, 622 F.3d at 1325; *see also Derolf*, 259 F. Supp. 3d at 886 ("The Court interprets 49 U.S.C. § 14704(a)(2) to confer upon TILA plaintiffs a pleading requirement to plausibly allege that they were injured, *i.e.* they were financially harmed, because of defendants' failures to adhere to the TILA regulations.").  The complaint merely concludes that Brant and the other drivers were financially harmed by

A-13

Defendants' failure to adhere to the TILA regulations. It contains no allegations, however, identifying the actual harm Brant and the other drivers suffered or plausibly suggesting that they were injured as a result of any alleged TILA violation. Stated differently, Brant does not allege a causal connection between Defendants' alleged failure to provide certain information and his claim that he and the other drivers were not paid enough. Brant's vague allegations are not enough to open the doors to the time-consuming and expensive discovery that a class action entails. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Brant's TILA claim could be dismissed on this basis alone.

In any event, Brant's allegations that the OOOA and Lease violated TILA are belied by the specific provisions contained in the OOOA and Lease. Brant alleges that the OOOA failed to set forth the compensation that drivers were to receive for their work by failing to specify deductions from the drivers' compensation for accessorial amounts due. Compl. ¶ 95. He also alleges that the OOOA failed to specify the reasons for accessorial amounts charged back to drivers. *Id.* ¶ 96. As an initial matter, the OOOA contained sufficient information regarding the way in which his compensation would be calculated. Dkt. No. 20-3, ¶¶ 4(c), 4(e); Ex. B § I. In addition, the OOOA provided that accessorials are amounts paid to Brant, not deducted from payments made to him, and it set forth the fees, charges, balances, and other amounts that may be deducted from his Owner-Operator Payment. Dkt. No. 20-3, Ex. B §§ I.B, II. Brant asserts that the itemized list of fees and charges only includes a method of computation that requires additional amounts to calculate the deduction amount and that this requires Defendants to provide additional documentation. TILA only requires "how the amount of each item is to be computed," however. 49 C.F.R. § 376.12(i).

Brant alleges that Defendants failed to provide drivers with copies of the freight bills from which their compensation was calculated. Compl. ¶ 97. He does not dispute that the OOOA

14

A-14

specifies that he had the "right to examine copies of Carrier's tariffs at Carrier's home office during reasonable business hours" and that Defendants would provide "a copy of the rated freight bill (or a computer-generated summary)" to drivers when the driver's "payment is based on a percentage of revenue." Dkt. No. 20-3, ¶ 4(e). Instead, he asserts that Defendants failed to actually provide the freight bills or allow the drivers to examine copies of Defendants' tariffs. Brant does not allege, however, that he sought and was denied the opportunity to review copies of Defendants' tariffs or that Defendants made the information unavailable.

Brant alleges that the OOOA failed to set forth the amount of escrow fund or performance bond required to be paid by lease drivers when seeking to terminate their OOOA and use their equipment to work for a different carrier. Compl. ¶ 98. The OOOA sets forth the amount to be deposited and maintained in an escrow account with respect to equipment leased by Brant to Defendants. Dkt. No. 20-3, ¶ 10(a), Ex. B § II. The agreement also provides that the Escrow Funds shall be paid and disbursed to Brant within 45 days of termination along with an accounting of all final settlements and disbursements. *Id.* ¶ 22(b). While Brant asserts that the OOOA and Lease did not specify the amount of the additional security deposit required, Appendix A to the Lease states the amounts of applicable security deposits. Dkt. No. 20-4 at 11.

In sum, the OOOA and Lease provided Brant with the information required by TILA and its regulations. For these reasons, Brant's TILA claim must be dismissed.

## CONCLUSION

For these reasons, Defendants' motion to dismiss for failure to state a claim (Dkt. No. 20) is **GRANTED**. The dismissal is without prejudice, however. Brant will be allowed thirty days from the date of this order in which to file an amended complaint curing the defects noted herein.

If no amended complaint is filed within the time allowed, the case will be dismissed and final

judgment entered.

   **SO ORDERED** at Green Bay, Wisconsin this 19th day of January, 2021.

                                   s/ William C. Griesbach
                                   William C. Griesbach
                                   United States District Judge

16

A-16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERIC R. BRANT,

                Plaintiff,

        v.                               Case No. 20-C-1049

SCHNEIDER NATIONAL INC., et al.,

                Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiff Eric R. Brant brought this action against Defendants Schneider National, Inc., Schneider National Carriers, Inc., Schneider Finance, Inc., and Doe Defendants 1–10, seeking redress for alleged violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, the Truth in Leasing Act (TILA), 49 U.S.C. § 14704, and Wisconsin state law.  The Court previously granted Defendants' first motion to dismiss, finding that Brant failed to state a claim upon which relief may be granted.  Brant was given 30 days in which to file an amended complaint, and Brant filed an amended complaint on February 18, 2021, asserting the same claims as his original complaint.  This matter comes before the Court on Defendants' motion to dismiss the amended complaint.  For the following reasons, Defendants' motion will be granted.

In the Court's previous decision, it dismissed all of Brant's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  First, the Court dismissed Brant's FLSA and Wisconsin state law wage claims because Brant was properly classified as an independent contractor, as he "had a considerable amount of control over his business and operations, had ample opportunity to control his profit and loss, was required to invest considerable sums into his

A-17

equipment and materials, and possessed a special skill requisite for performing the work." Dkt. No. 58 at 11. Next, the Court dismissed Brant's unjust enrichment claim because Brant had not alleged facts from which it could be inferred that the Owner-Operator Operating Agreement (OOOA) and the Lease were void or unenforceable and his unjust enrichment claim only challenged the subject matter within the scope of the OOOA and the Lease. *Id.* at 12. Finally, the Court dismissed Brant's TILA claim on the ground that he failed to allege a causal connection between Defendants' failure to provide certain information as required by TILA and his claim that he and other drivers were not paid enough. *Id.* at 14.

The instant motion to dismiss raises the same issues as Defendants' first motion to dismiss. Although the amended complaint contains new factual allegations, the additional allegations do not cure the inadequacies noted by the Court. Therefore, Brant's allegations fail to state a claim upon which relief can be granted for the same reasons set forth in the Court's decision and order granting Defendants' motion to dismiss.

Accordingly, Defendants' motion to dismiss Brant's First Amended Complaint (Dkt. No. 71) is **GRANTED**. Brant's motion to conditionally certify a collective action (Dkt. No. 44) is **DENIED as moot**. This case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 20th day of May, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

2

A-18

AO 450 (Rev. 5/85) Judgment in a Civil Case

# United States District Court

## EASTERN DISTRICT OF WISCONSIN

ERIC R. BRANT,

              Plaintiff,

                    **JUDGMENT IN A CIVIL CASE**

      v.                    Case No. 20-C-1049

SCHNEIDER NATIONAL INC., et al.,

              Defendant.

☐   **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict

☒   **Decision by Court.** This action came before the Court for consideration.

    **IT IS HEREBY ORDERED AND ADJUDGED** that plaintiff takes nothing, the case is DISMISSED.

                    Approved:  s/ William C. Griesbach
                                 WILLIAM C. GRIESBACH
                                 United States District Judge

Dated:  May 20, 2021

                                 GINA M. COLLETTI
                                 Clerk of Court

                                 s/ Lori Hanson
                                 (By) Deputy Clerk

A-19